# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 07-3938/08-1026

_____

| | | |
|---|---|---|
| Charles Brooks Co.; Mr. "B" Logging Company, Inc.; Charles Brooks, Individually, | * * * * | |
| Appellants/Cross-Appellees, | * * | Appeals from the United States District Court for the |
| v. | * * | Western District of Arkansas. |
| Georgia-Pacific, LLC, | * * | |
| Appellee/Cross-Appellant. | * | |

_____

Submitted: September 26, 2008
Filed: January 14, 2009

_____

Before RILEY, BRIGHT, and MELLOY, Circuit Judges.

_____

RILEY, Circuit Judge.

Charles Brooks Co., Mr. "B" Logging Company, Inc. (Mr. "B" Logging), and Charles Brooks (Brooks), individually, (collectively, appellants) brought various contract and tort claims against Georgia-Pacific, LLC (Georgia-Pacific), arising out of appellants' independent contractor relationship with Georgia-Pacific. The district

court[1] dismissed the corporations' claims for lack of capacity and dismissed Mr. Brooks's individual claims for lack of standing. Appellants appeal the dismissals and also the district court's grant of summary judgment to Georgia-Pacific on appellants' unjust and equitable restitution claims.[2] We affirm.

## I. BACKGROUND

Brooks began working in the Arkansas logging industry in 1946. Brooks became an independent contractor for Georgia-Pacific in 1962 after Georgia-Pacific acquired a mill in Crossett, Arkansas, and he continued to contract with Georgia-Pacific until he retired in 2002. Brooks formed Charles Brooks Co. in 1964, and thereafter operated in corporate form. Brooks formed Mr. "B" Logging in 1995, which merged into Charles Brooks Co. on September 28, 2000.

Appellants allege Georgia-Pacific initiated a new logging system in 1995 continuing into 1996, and as part of the new logging system, Georgia-Pacific made mandatory equipment requirements of its contractors. Appellants contend Georgia-Pacific advised appellants that the contractors who did not comply with the equipment requirements would no longer receive Georgia-Pacific contracts. Appellants further allege, in exchange for acquiring the new, expensive equipment, Georgia-Pacific promised appellants long-term wood production operations.

_____

[1]The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas.

[2]On cross-appeal, Georgia-Pacific challenges the district court's partial denial of summary judgment on various claims should we find the district court erred in dismissing the claims for lack of capacity and standing. We lack jurisdiction to address the issues raised by Georgia-Pacific for the reasons stated in this opinion, and because the district court's partial denial of summary judgment was not a final order and Georgia-Pacific did not seek and was not granted an interlocutory appeal of the order. See Reinholdson v. Minnesota, 346 F.3d 847, 849 (8th Cir. 2003).

Appellants purchased the new equipment in approximately 1997 and continued to contract with Georgia-Pacific. Appellants claim Georgia-Pacific continued to contract with noncomplying contractors. Appellants argue Georgia-Pacific reduced appellants' quotas to such an extent that appellants were unable to pay down the equipment loans and to pay normal operating expenses. At the same time, appellants insist Georgia-Pacific repeatedly assured them there would be enough work for appellants to pay off the new equipment.

The record shows Charles Brooks Co. and Georgia-Pacific entered into written contracts with one dated December 30, 1996, and another dated January 1, 2000. The contracts each provide: "Contractor recognizes and acknowledges that [Georgia-Pacific] is not obligated to supply Contractor with any minimum amount of services to be provided and that there is absolutely no guarantee as to the amount of work to be performed." Each contract also conspicuously states:

> The terms and provisions of this Contract, along with exhibits and individual purchase orders, constitute the entire agreement between the parties and supersede all representations or previous communications, negotiations, proposals, representations, conditions, promises, or agreements, either oral or written, between the parties hereto with respect to the subject matter hereof. Contractor expressly acknowledges and agrees that [Georgia-Pacific] has not made any representations or promises which are not contained in this agreement and Contractor has not relied on any such representations or promises in entering into this Contract. This Contract may not be enlarged, modified, or altered, except in writing, signed by duly authorized representatives of the parties.

In April 2002, Brooks terminated his relationship with Georgia-Pacific and retired from the logging business due to financial hardship. Appellants were able to return some of the new logging equipment to the seller, and the remaining equipment

was sold at a dispersal sale. The proceeds of the sale were insufficient to eliminate appellants' debt.

On August 14, 2002, appellants filed an action against Georgia-Pacific in the Circuit Court of Ashley County, Arkansas, asserting various contract and tort claims. Georgia-Pacific removed the action to the United States District Court for the Western District of Arkansas on September 11, 2002. In the meantime, the Arkansas Secretary of State revoked the corporate charter of Charles Brooks Co. on December 31, 2002, for nonpayment of franchise taxes. The district court dismissed the action without prejudice on June 7, 2005, after appellants moved for a voluntary non-suit.

Appellants refiled their complaint on June 6, 2006. On March 7, 2007, Georgia-Pacific moved for summary judgment on all claims. The district court granted in part, and denied in part, Georgia-Pacific's motion. On May 1, 2007, Georgia-Pacific moved to dismiss (1) the remaining claims of Charles Brooks Co. and Mr. "B" Logging for lack of capacity; and (2) the remaining individual claims of Brooks for lack of standing. On May 14, 2007, the district court granted the motion to dismiss with respect to the claims of Charles Brooks Co. and Mr. "B" Logging, and denied the motion to dismiss with respect to the individual claims of Brooks. On November 2, 2007, Georgia-Pacific filed a renewed motion to dismiss Brooks's individual claims, which the district court granted on November 30, 2007.

## II.    DISCUSSION
### A.    Standard of Review

"This court reviews de novo the grant of a motion to dismiss, 'taking all facts alleged in the complaint as true.'" Students for Sensible Drug Policy Foundation v. Spellings, 523 F.3d 896, 899 (8th Cir. 2008) (quoting Koehler v. Brody, 483 F.3d 590, 596 (8th Cir. 2007)). "Dismissal is proper where the plaintiffs' complaint fails to state a claim upon which relief can be granted." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (citing Fed. R. Civ. P. 12(b)(6)).

## B.     Charles Brooks Co. and Mr. "B" Logging

Appellants challenge the district court's dismissal of the claims of Charles Brooks Co. and Mr. "B" Logging.[3]  The district court found Mr. "B" Logging Company did not have a separate corporate existence at the time the original action was filed in 2002, because it merged into Charles Brooks Co. on September 28, 2000. The district court then found Charles Brooks Co. lacked capacity to sue at the time the complaint was refiled in 2006, because Charles Brooks Co.'s corporate charter had been revoked on December 31, 2002, for nonpayment of franchise taxes.  We agree with the district court's factual findings and legal conclusions.

Under Arkansas law, when the Secretary of State revokes a corporation's corporate charter for failure to pay franchise taxes, the corporation ceases to exist legally.  HRR Arkansas, Inc. v. River City Contractors, Inc., 87 S.W.3d 232, 237 (Ark. 2002).  "[A] corporation cannot file a complaint in court after it ceases to exist legally" because it lacks "the capacity to sue."  Id. (citing Committee for Utility Trimming, Inc. v. Hamilton, 718 S.W.2d 933 (Ark. 1986)).  In HRR Arkansas, Inc., the Secretary of State revoked the corporate charter of River City Contractors, Inc. (River City), for failure to pay franchise taxes.  HRR Arkansas, Inc., 87 S.W.3d at 237.  River City later counterclaimed in a lawsuit by HRR Arkansas, Inc. and obtained a judgment in the trial court against HRR Arkansas, Inc.  Id.  The Arkansas Supreme Court reversed, noting River City never attempted to reinstate its corporate

---

[3]We find no merit to appellant's argument that Georgia-Pacific waived its right to challenge the corporate plaintiffs' capacity to sue by filing the motion to dismiss after the district court's imposed deadline.  See Smith v. Insley's Inc., 499 F.3d 875, 879 (8th Cir. 2007) (citing Reasonover v. St. Louis County, Mo., 447 F.3d 569, 579 (8th Cir. 2006) ("District courts have broad discretion to set filing deadlines and enforce (or not enforce) local rules.")).  The district court did not abuse its broad discretion in this case.

charter, and, therefore, River City lacked the capacity to sue and to obtain a judgment. Id.

Appellants, however, urge us to adopt the reasoning of Gibson v. Dennis (In re Russell), 123 B.R. 48, 51 (Bankr. W.D. Ark. 1990), where the United States Bankruptcy Court for the Western District of Arkansas determined a corporation whose corporate charter was revoked for failure to pay franchise taxes could maintain a lawsuit. The bankruptcy court reasoned, because the corporation had not been dissolved, the corporate entity could continue to exist for the limited purpose of winding up its affairs, including the ability to sue or be sued. Id. The bankruptcy court relied upon (1) Ark. Code Ann. § 4-26-1104, which allows a corporation to sue; and (2) its finding that "[no] Arkansas case . . . has held that such a corporation has lost its capacity to sue." In re Russell, 123 B.R. at 51.

Appellants' reliance on In re Russell is misplaced. In re Russell was decided in 1990. The Arkansas Supreme Court has since stated unequivocally that a corporation whose charter has been revoked lacks the capacity to initiate a lawsuit. See HRR Arkansas, Inc., 87 S.W.3d at 237; First Commercial Bank, N.A. v. Walker, 969 S.W.2d 146, 153 (Ark. 1998); Schmidt v. McIlroy Bank & Trust, 811 S.W.2d 281, 284 (Ark. 1991). Like the corporation in HRR Arkansas, Inc., Charles Brooks Co.'s corporate charter was revoked in 2002 for failure to pay franchise taxes. At the time the present lawsuit was filed on June 6, 2006, Charles Brooks Co. lacked the capacity to initiate a lawsuit, and Charles Brooks Co. has never attempted to reinstate its corporate charter. We affirm the district court's dismissal of the claims of Charles Brooks Co. and Mr. "B" Logging for lack of capacity to sue.

## C. Brooks Individually

Appellants next challenge the district court's dismissal of Brooks's individual claims for lack of standing. Appellants assert Brooks had standing to bring his individual claims for two reasons. First, appellants argue Brooks, as the sole

-6-

shareholder of the corporate entities, could sue in his own right once the corporations ceased to exist legally. Second, appellants contend Brooks can assert his individual claims because he personally guaranteed loans to Charles Brooks Co. and Mr. "B" Logging to pay for the new equipment.

"There is a near universal rule that a corporation and its stockholders are separate and distinct entities, even though a shareholder may own the majority of the stock." HRR Arkansas, Inc., 87 S.W.3d at 237 (citations omitted). "Generally, a corporate officer has no individual right of action against a third party for alleged wrongs inflicted on the corporation, even if the officer is the sole shareholder." Id. (citing First Commercial Bank, N.A., 969 S.W.2d 146). "Direct suits brought by a shareholder are only appropriate when the shareholder asserts an injury that is distinct and separate from the harm caused to the corporation." Bomar v. Moser, 251 S.W.3d 234, 239 (Ark. 2007) (citing Farm Bureau Ins. Co. of Ark., Inc. v. Running M Farms, Inc., 237 S.W.3d 32 (2006)).

We dispose of appellants' first argument easily—Brooks's mere status as the sole shareholder of Charles Brooks Co. and Mr. "B" Logging does not confer upon him standing to sue Georgia-Pacific individually. See HRR Arkansas, Inc., 87 S.W.3d at 237; Schmidt, 811 S.W.2d at 283-84. Thus, in order for Brooks to assert individual claims against Georgia-Pacific, he must have alleged an injury that is separate and distinct from the harm incurred by the corporations. Appellants contend Brooks's status as a guarantor of loans to the corporations gives him standing to pursue his claims. However, nowhere in the complaint does Brooks allege he personally guaranteed loans to the corporations. The complaint is devoid of allegations Brooks suffered an injury separate and distinct from the corporations. In fact, the complaint makes no distinction whatsoever between the claims of Brooks and the claims of the corporation. Brooks fails to allege an individual claim. Accordingly, we affirm the district court's dismissal of Brooks's individual claims for lack of standing.

### D. Unjust and Equitable Restitution Claims

Because we conclude the district court did not err in dismissing the claims of Charles Brooks Co. and Mr. "B" Logging for lack of capacity and the individual claims of Brooks for lack of standing, we need not address whether the district court properly granted summary judgment to Georgia-Pacific on appellants' unjust and equitable restitution claims.

## III.   CONCLUSION

We affirm the district court's dismissal of (1) the claims of Charles Brooks Co. and Mr. "B" Logging for lack of capacity, and (2) the individual claims of Brooks for lack of standing. The balance of the appeal is moot.

BRIGHT, concurring.

I concur in the judgment but write separately on the dismissal of Charles Brooks's individual claims. Such dismissal would be without prejudice. *See McCarney v. Ford Motor Co.,* 657 F.2d 230, 233 (8th Cir. 1981). Brooks never asserted an individual claim in the complaint of this federal cause of action, but he unsuccessfully attempted to bring that issue forward in a later response to the defendant's renewed motion to dismiss. His right to bring an individual claim may still be open.

_____