# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 08-1701/1789

_____

PFS Distribution Company; Pilgrim's         *
Pride Corporation,                          *
                                            *
        Appellants/Cross-Appellees,         *
                                            *
    v.                                      *
                                            *
Darrell Raduechel; Barry Spain,             *
                                            *
        Appellees/Cross-Appellants,         *   Appeal from the United States
                                            *   District Court for the
Richard R. Donohue; Theobald                *   Southern District of Iowa.
Donohue & Thompson, P.C.;                   *
MidWestOne Bank and Trust; Steven           *
P. Hicks,                                   *
                                            *
        Appellees/Defendants,               *
                                            *
John Pothoven; D&B Solutions, Inc.,         *
                                            *
        Defendants.                         *

_____

Submitted: April 15, 2009
Filed: July 28, 2009

_____

Before WOLLMAN, BYE, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

PFS Distribution Company (PFS Distribution) and Pilgrim's Pride Corporation (Pilgrim's Pride) (collectively, PFS) sued Darrell Raduechel (Raduechel) and Barry Spain (Spain) for breach of fiduciary duties and copyright infringement in connection with the formation and operation of Raduechel's and Spain's company, D&B Solutions, Inc. (D&B Solutions). PFS also sued Raduechel; Spain; D&B Solutions; John Pothoven (Pothoven); Richard Donohue (Donohue) and Theobald Donohue & Thompson, P.C. (TD&T) (collectively, Accounting Defendants); and Steven Hicks (Hicks) and MidWestOne Bank and Trust (MidWestOne) (collectively, Banking Defendants) for civil conspiracy, constructive trust and unjust enrichment, misappropriation of trade secrets, and aiding and abetting. D&B Solutions was also added to PFS's copyright infringement claim. Raduechel counterclaimed against PFS for payment of a salary bonus.

The district court[1] dismissed Raduechel's counterclaim, and granted summary judgment to PFS on the issue of Raduechel's and Spain's liability for breach of fiduciary duties and misappropriation of trade secrets. The district court left for trial the remaining claims, as well as the issues of causation and damages for Raduechel's and Spain's breach of fiduciary duties and misappropriation of trade secrets. A jury returned a verdict in favor of all defendants on all of PFS's remaining claims. PFS then moved for equitable relief and a new trial. The district court denied both motions.

PFS now challenges the district court's (1) denial of PFS's motion for a new trial; (2) jury instructions on the civil conspiracy, and aiding and abetting claims; (3) expert witness rulings; and (4) denial of equitable relief. Raduechel cross appeals the district court's dismissal of his counterclaim, and Raduechel and Spain challenge the district court's summary judgment ruling. We affirm.

---

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

## I.  BACKGROUND

PFS owned and operated a food distribution center in Oskaloosa, Iowa (PFS Oskaloosa).  PFS Oskaloosa was originally owned by a private individual, and was bought by ConAgra Poultry Company (ConAgra Poultry) in 1975.  In November 2003, Pilgrim's Pride bought ConAgra Poultry and acquired PFS Oskaloosa.

Raduechel began working at PFS Oskaloosa in 1979, and became general manager around 1991.  Spain began working at PFS Oskaloosa in 1987, and was promoted to sales manager in 1996 or 1997.  While Raduechel and Spain worked at PFS Oskaloosa, two of PFS Oskaloosa's largest customers for poultry sales were Affiliated Foods (Affiliated) and Fareway Stores (Fareway).  Raduechel handled all sales to Affiliated, and Spain handled all sales to Fareway.

When Pilgrim's Pride acquired ConAgra Poultry, Pilgrim's Pride assumed Raduechel's compensation agreement with ConAgra Poultry, which included a base salary and an incentive plan.  The incentive plan provided Raduechel would receive a bonus in an amount tied to a percentage of PFS Oskaloosa's profits, but also included a provision that allowed reduction of the bonus, down to zero in "extreme conditions," if Raduechel's "general job performance [was] unsatisfactory, or [Raduechel's] managerial attitude [was] not in the best interest of the Company." Under the incentive plan, Raduechel's 2003 salary was approximately $295,000—$45,000 in base salary and approximately $250,000 in bonus. Raduechel's compensation agreement was effective until May 30, 2004.

In December 2003, Raduechel attended a PFS managers meeting in Dallas, Texas. Although compensation was not formally discussed at the meeting, Raduechel became concerned that his compensation and business at PFS Oskaloosa would be reduced.  Raduechel, however, left the meeting thinking PFS would have a proposed compensation package for him by the end of January 2004.

Raduechel told Spain about the concerns Raduechel was having regarding potential compensation and business reduction at PFS Oskaloosa. Raduechel and Spain began to formulate a "Plan B" in the event "things [did not] work out" at PFS Oskaloosa. "Plan B" entailed Raduechel and Spain starting their own distribution company, D&B Solutions, to compete with PFS Oskaloosa.

In late January 2004, Raduechel and Spain met with Pothoven at MidwestOne to discuss financing for D&B Solutions. Pothoven advised Raduechel and Spain to create a business plan, and Pothoven recommended several accountants to assist Raduechel and Spain. Raduechel and Spain then contacted Donohue at TD&T, and met or corresponded with Donohue several times during late January and early February 2004 to discuss and prepare a business plan. During one of the meetings, Raduechel and Spain gave Donohue financial documents from PFS Oskaloosa. Upon seeing the documents, Donohue expressed concern that the documents were confidential, and told Raduechel and Spain to seek legal advice regarding the documents. Although Donohue inadvertently retained the documents, neither Raduechel, Spain, nor Donohue used the documents or showed them to anyone after the documents were initially disclosed.

In early March 2004, Bobby Matkin (Matkin), a PFS executive, visited PFS Oskaloosa. During the visit, Matkin told Raduechel that PFS did not yet have a proposed compensation package for Raduechel. Raduechel was told a proposed compensation package would be provided to him by April 1, 2004. Raduechel became frustrated, and continued to work on financing for D&B Solutions at MidWestOne with Hicks. PFS did not provide Raduechel with a proposed compensation package on April 1, 2004.

On May 21, 2004, MidWestOne extended a line of credit, a real estate loan, and a commitment on a letter of credit to Raduechel and Spain for operation of D&B Solutions. Around May 26, 2004, Matkin provided Raduechel with a proposed

compensation agreement. The agreement provided for a base salary of $150,000 and required Raduechel to manage both PFS Oskaloosa and PFS's Green Bay office. Raduechel rejected the offer. Matkin then offered Raduechel a base salary of $150,000 to manage only PFS Oskaloosa. Raduechel rejected Matkin's amended offer, and resigned from PFS Oskaloosa on June 7, 2004.

After Raduechel resigned, Matkin inquired into Spain's interest in becoming the branch manager at PFS Oskaloosa. On June 14, 2004, Spain was offered the branch manager job for a base salary of $110,000. Spain rejected the offer on June 15, 2004, and resigned that same day. Raduechel and Spain started operating D&B Solutions after Spain resigned, and Affiliated and Fareway began buying poultry from D&B Solutions around late June to early July 2004.

On June 21, 2004, PFS filed a complaint in the district court against Raduechel, Spain, and D&B Solutions seeking damages and injunctive relief for breach of fiduciary duties, civil conspiracy, and unjust enrichment and constructive trust. PFS subsequently added copyright infringement and misappropriation of trade secret claims, and the district court granted a preliminary injunction against the operation of D&B Solutions on August 11, 2004. After the preliminary injunction was entered, D&B Solutions stopped operation; however, Fareway and Affiliated did not return to PFS Oskaloosa as customers, and instead began buying poultry directly from the companies' preferred poultry suppliers.

On August 30, 2004, PFS sent a letter to Raduechel explaining PFS would not pay Raduechel the bonus which was due under Raduechel's ConAgra Poultry compensation agreement and incentive plan that expired on May 30, 2004. PFS stated Raduechel was not entitled to the bonus under the terms of the incentive plan due to PFS's complaint against Raduechel and the district court's grant of a preliminary injunction. As a result, Raduechel filed a counterclaim against PFS for payment of

the bonus alleging (1) violation of the Iowa Wage Payment Collection Act (IWPCA), (2) breach of oral contract, (3) breach of written contract, and (4) promissory estoppel.

PFS amended its complaint, adding Donohue, TD&T, MidWestOne, Hicks, and Pothoven as defendants on the civil conspiracy, constructive trust and unjust enrichment, and misappropriation of trade secrets claims. PFS also added a claim for aiding and abetting against all defendants.

On February 7, 2005, PFS moved to dismiss Raduechel's counterclaim under Fed. R. Civ. P. 12(b)(6). The district court granted the motion on August 9, 2005. Raduechel then moved the district court to reconsider its ruling on PFS's motion to dismiss. The district court denied Raduechel's motion for reconsideration on January 17, 2006.

On January 8, 2007, the district court addressed summary judgment motions from Pothoven, MidWestOne, Hicks, PFS, Donohue, and TD&T. The district court (1) granted Pothoven's motion for summary judgment and dismissed Pothoven from the action; (2) granted Donohue's and TD&T's motion on the constructive trust and unjust enrichment claim, and (3) granted partial summary judgment to PFS on the issue of Raduechel's and Spain's liability for breach of fiduciary duties and misappropriation of trade secrets. The district court left for trial the issues of causation and damages on the breach of fiduciary duties and misappropriation of trade secrets claims against Raduechel and Spain, and denied the summary judgment motions in all other respects. Raduechel and Spain subsequently moved the district court to reconsider the grant of summary judgment, but the district court denied the motion.

Before trial, the parties agreed PFS's claim for unjust enrichment and constructive trust should be stayed until the resolution of the legal claims in PFS's

amended complaint. Thus, the district court ordered all evidence regarding PFS's claim for unjust enrichment and constructive trust be withheld until after trial.

A jury trial began on February 12, 2007. On February 27, 2007, the jury returned a verdict in favor of all defendants on all of the remaining claims. The jury found (1) Raduechel's and Spain's breach of fiduciary duties and misappropriation of trade secrets were not proximate causes of damage to PFS; (2) the Accounting and Banking Defendants had not misappropriated trade secrets; (3) the Accounting and Banking Defendants did not enter into a conspiracy with Raduechel and Spain; and (4) the Accounting and Banking Defendants did not aid and abet Raduechel's and Spain's breach of fiduciary duties. The jury did not address the issue of damages.

After trial, PFS moved for equitable relief in conjunction with the unjust enrichment and constructive trust claim which had been stayed. PFS asked the district court for disgorgement of Raduechel's and Spain's salaries during the time Raduechel and Spain were breaching their fiduciary duties. On September 12, 2007, the district court found it would not be equitable to require Raduechel and Spain to disgorge their salaries, and denied PFS's motion.

PFS then moved the district court for a new trial, arguing the jury's finding of no proximate cause on the breach of fiduciary duties and misappropriation of trade secrets claims against Raduechel and Spain, as well as the jury's findings on the conspiracy and aiding and abetting claims, were against the greater weight of the evidence. The district court denied PFS's motion. This appeal follows.

II.   DISCUSSION
      A.   **Motion for a New Trial on the Breach of Fiduciary Duties and Misappropriation of Trade Secrets Claims**
      PFS first challenges the district court's denial of PFS's motion for a new trial on PFS's breach of fiduciary duties and misappropriation of trade secrets claims

against Raduechel and Spain. The district court found PFS was not entitled to a new trial because there was evidence PFS's initial losses after Raduechel and Spain left were offset by PFS's retention of Raduechel's and Spain's bonuses, and there was evidence any prolonged loss suffered by PFS was caused by the large sum PFS paid in attorney fees for the litigation and PFS's failure to act quickly to regain Affiliated and Fareway as customers. The district court noted PFS's effort to regain Affiliated and Fareway as customers and PFS's attorney fees were "technically . . . relevant to the issue of damages." However, the district court concluded, "In the context of the present action, the Court finds that any distinction between proximate cause and damages is largely academic," and "[u]nder this scenario, the issue of proximate cause was subsumed by the issue of damages, and the jury appropriately answered 'no' on the question that appeared first in the verdict forms."

PFS, primarily relying on Storage Tech. Corp. v. Cisco Sys., Inc., 395 F.3d 921 (8th Cir. 2005), and Vigoro Indus., Inc. v. Crisp, 82 F.3d 785 (8th Cir. 1996), now maintains it was entitled to a new trial because no reasonable jury could have found Raduechel's and Spain's misconduct did not proximately cause damage to PFS when the evidence at trial showed Fareway and Affiliated stopped buying chicken from PFS, and began buying chicken from D&B Solutions, in the summer of 2004.[2] PFS further contends the district court's reasoning was erroneous because the district court improperly conflated the issues of proximate cause and damages by equating the jury's no proximate cause finding with a finding of no damages. PFS also refutes the

---

[2]In support of this argument, PFS's counsel submitted a Fed. R. App. P. 28(j) letter urging us also to consider Navigant Consulting, Inc. v. Wilkinson, 508 F.3d 277 (5th Cir. 2007). Fed. R. App. P. 28(j) allows a party to submit "pertinent and significant authorities [which] come to a party's attention after the party's brief has been filed—or after oral argument but before decision." Navigant was decided 17 months before oral argument in this case. We prefer that authorities cited in a 28(j) letter "consist of 'intervening decisions or new developments.'" Davis v. U.S. Bancorp, 383 F.3d 761, 763-64 n.2 (8th Cir. 2004) (quoting 8th Cir. R. Appx. III(I)(2) (2004)). Nonetheless, we find Navigant is not controlling or persuasive in this case.

district court's reasoning by asserting (1) PFS was damaged by the loss of Affiliated and Fareway as customers regardless of PFS's net losses or PFS's retention of Raduechel's and Spain's bonuses; (2) PFS's effort to regain Affiliated and Fareway as customers is irrelevant to proximate causation; and (3) in the event we find a new trial is warranted, the hypothetical possibility that Raduechel and Spain could have quit PFS and lawfully formed D&B Solutions is not a defense to proximate causation or damages.

We review a district court's denial of a motion for a new trial for abuse of discretion. See Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997). When a motion for a new trial is founded on the assertion that "the jury's verdict is against the weight of the evidence," the district court's ruling is "virtually unassailable on appeal." Id. (internal quotations and citations omitted). "Viewing the evidence in the light most favorable to the verdict," Computrol, Inc. v. Newtrend, L.P., 203 F.3d 1064, 1068–69 (8th Cir. 2000), "we will reverse only when there is an absolute absence of evidence to support the jury's verdict." Slidell, Inc. v. Millennium Inorganic Chems., Inc., 460 F.3d 1047, 1057 (8th Cir. 2006) (citation omitted). The crucial determination "is whether a new trial should have been granted to avoid a miscarriage of justice." Keeper, 130 F.3d at 1314 (internal marks and citation omitted).

The Iowa Supreme Court has endorsed the definition of "proximate cause" which the district court used in the jury instructions in this case, and which provides,

> The conduct of a party is a proximate cause of damage when it is a substantial factor in producing damage and when the damage would not have happened except for the conduct. "Substantial" means the party's conduct has such an effect in producing damage as to lead a reasonable person to regard it as a cause.
>
> There can be more than one proximate cause of an injury or damage.

-9-

See Benn v. Thomas, 512 N.W.2d 537, 539-40 (Iowa 1994). The Iowa Supreme Court has also explained,

> Courts have recognized a distinction between proof of the fact that damages have been sustained and proof of the amount of those damages. If it is speculative and uncertain whether damages have been sustained, recovery is denied. If the uncertainty lies only in the amount of damages, recovery may be had if there is proof of a reasonable basis from which the amount can be inferred or approximated.

Orkin Exterminating Co. v. Burnett, 160 N.W.2d 427, 430 (Iowa 1968) (citations omitted).

Under Iowa law, a reasonable jury could have concluded Raduechel's and Spain's misconduct did not proximately cause PFS to lose Affiliated and Fareway as customers. First, the jury was presented evidence that Fareway was planning to leave PFS regardless of Raduechel's and Spain's formation of D&B Solutions. Fareway's head meat buyer, Rod Nedved (Nedved), testified Fareway had encountered problems with PFS and had discussed leaving PFS several months before D&B Solutions was formed. Fareway's vice president of purchasing, Randy Naeve (Naeve), corroborated Nedved's testimony. Spain also testified Fareway had left PFS and bought some poultry products directly from a supplier from 2001 to 2003, and Nedved testified it was inevitable Fareway would leave PFS and begin buying direct from a supplier. Nedved further testified the operation of D&B Solutions was not the sole reason Fareway left PFS, but rather, leaving PFS to buy direct was more financially sound, easier for communication, and more reliable. Although PFS contends this testimony does not account for the time when Fareway left PFS and was buying chicken through D&B Solutions in the summer of 2004, we conclude Spain's, Nedved's, and Naeve's testimonies provide a reasonable basis for a jury to conclude (1) Fareway was planning to leave PFS and buy direct regardless of the operation of D&B Solutions; and (2) Fareway stopped doing business with PFS and began doing business with

-10-

D&B Solutions in the summer of 2004, not because of Raduechel's and Spain's misconduct in forming D&B Solutions, but because Fareway had encountered problems with PFS before the formation of D&B Solutions.

Second, a reasonable jury could conclude PFS lost Affiliated and Fareway as customers due to PFS's own actions. Raduechel testified he initially expected a proposed compensation package from PFS in late January 2004, approximately four months before the expiration of Raduechel's ConAgra compensation agreement, but did not receive a proposed compensation package from PFS until May 26, 2004, four days before Raduechel's ConAgra compensation agreement expired. Matkin, PFS's vice president of logistics and distribution, admitted PFS was taking a significant risk that Raduechel would leave and compete with PFS when PFS delayed offering Raduechel a compensation package until a few days before Raduechel's ConAgra Poultry agreement expired. Further, Raduechel testified (1) PFS's first compensation proposal involved approximately half of the compensation Raduechel previously had with ConAgra Poultry, and increased work and responsibility with PFS's Green Bay office; (2) PFS's modified compensation proposal, after Raduechel rejected the first proposal, eliminated the increased work and responsibility with PFS's Green Bay office, but still required Raduechel to take an approximate 50% pay cut; (3) Raduechel felt PFS "could not find a way to compensate me and was expecting me to leave"; and (4) D&B Solutions was "Plan B" for Raduechel up until Raduechel submitted his resignation.

The director of meat operations for Affiliated, Mike Wallace (Wallace), testified Affiliated bought poultry from Raduechel because Wallace trusted Raduechel and valued Raduechel's service. Wallace further testified he would have bought from Raduechel regardless of whether Raduechel was employed by PFS or D&B Solutions. Viewing the evidence in the light most favorable to the jury verdict, Raduechel's, Matkin's, and Wallace's testimonies provide a reasonable basis for a jury to conclude Wallace would have followed Raduechel regardless of Raduechel's employer, and

-11-

thus PFS, not Raduechel's and Spain's misconduct, caused the loss of Affiliated as a customer, because PFS did not adequately take actions to retain Raduechel and thereby preserve PFS's relationship with Affiliated.

Similarly, Naeve testified that, prior to the formation of D&B Solutions, Fareway had encountered quality and accuracy problems with PFS's deliveries, namely Fareway had received some ice-packed poultry and had received some poultry from suppliers other than Fareway's preferred supplier. Naeve's testimony was corroborated by Nedved, who also testified about the quality and accuracy issues Fareway had with PFS's deliveries before D&B Solutions began operating. Nedved testified Fareway began buying poultry from Spain at D&B Solutions due to Spain's ability to guarantee poultry from Fareway's preferred supplier, and stated Fareway could buy poultry from any supplier "if [Fareway] maybe had issues or reasons to go another direction." A reasonable jury could conclude, based on this testimony, PFS lost Fareway as a customer in the summer of 2004 due to PFS's quality and accuracy problems, not necessarily the formation and operation of D&B Solutions.

Finally, PFS's reliance on Storage Tech and Vigoro is not persuasive. In Vigoro, we affirmed a district court's finding that an employee breached fiduciary duties. See Vigoro, 82 F.3d at 789. However, our discussion did not analyze whether the district court properly found the breaches proximately caused damage. Rather, our discussion focused on (1) whether the district court properly found the employee had breached fiduciary duties, and (2) whether the district court erred in determining the amount of damages. See id. at 788-90. Vigoro, thus, does not apply to the specific proximate cause arguments PFS makes in this case. Similarly, in Storage Tech, we held, under Minnesota law, an employer had not proven the certainty of damages for claims of breach of fiduciary duties and misappropriation of trade secrets because the employer failed to produce enough evidence for a jury to calculate damages. See id. at 928-29. This discussion regarding the certainty of damages under Minnesota law

-12-

is different from our examination of PFS's specific proximate cause arguments, and does not influence our analysis in this case.

We conclude the jury's proximate cause finding was not a miscarriage of justice, and the district court did not abuse its considerable discretion in denying PFS's motion for a new trial on the breach of fiduciary duties and misappropriation of trade secrets claims. Because we conclude a reasonable jury could have found Raduechel's and Spain's formation and operation of D&B Solutions did not proximately cause PFS to lose Affiliated and Fareway as customers, we choose not to address PFS's other contentions regarding the district court's reasoning for upholding the jury verdict. See Palavra v. I.N.S., 287 F.3d 690, 693 (8th Cir. 2002) ("In reviewing district courts, we may affirm the judgment on any basis disclosed in the record, whether or not the district court agreed with or even addressed that ground.").

### B. Conspiracy Claim

PFS next argues the district court erred in its treatment of PFS's conspiracy claim against the Accounting and Banking Defendants because the district court (1) should have granted PFS's motion for a new trial on the conspiracy claim, and (2) improperly instructed the jury on the conspiracy claim.

### 1. New Trial Motion

PFS contends it was entitled to a new trial on the conspiracy claim against the Accounting and Banking Defendants because the evidence at trial showed the Accounting and Banking Defendants (1) knew Raduechel and Spain were top executives at PFS, (2) knew D&B Solutions would directly compete with PFS, and (3) knew D&B Solutions planned to take a significant portion of PFS's business. PFS asserts this evidence demonstrates the Accounting and Banking Defendants knew Raduechel and Spain were acting improperly, and thus the Accounting and Banking Defendants had the requisite knowledge and intent to enter into a conspiracy. PFS

also claims the district court erred in justifying the jury verdict with an "advice of counsel" defense and a "mistake of law" defense.

We review the district court's denial of PFS's motion for a new trial for abuse of discretion, and give the district court's ruling high deference. See Keeper, 130 F.3d at 1314. Under Iowa law, "[l]iability for civil conspiracy requires an agreement between the actor and the party sought to be held liable." Wright v. Brooke Group Ltd., 652 N.W.2d 159, 174 (Iowa 2002) (citation omitted). This agreement "must exist between the two persons to commit a wrong against another," Ezzone v. Riccardi, 525 N.W.2d 388, 398 (Iowa 1994), and "results only from a defendant's knowing and voluntary participation in a common scheme to take action, lawful or unlawful, that ultimately subjects the actor to liability to another." Wright, 652 N.W.2d at 174 (internal marks and citations omitted).

### a.      Accounting Defendants

The district court found PFS was not entitled to a new trial on the conspiracy claim against the Accounting Defendants because Donohue testified he did not know Raduechel and Spain were breaching fiduciary duties and he did not intend to help Raduechel and Spain damage PFS. The district court also reasoned the Accounting Defendants' expert, Susan Chantland (Chantland), testified Donohue's actions were consistent with prevailing accounting practices. The district court found Donohue's and Chantland's testimonies credible and consistent with a jury finding that the Accounting Defendants lacked the required intent to engage in a conspiracy, and thus a new trial was not warranted. We agree with the district court.

Donohue testified he never heard Raduechel or Spain state it was Raduechel's or Spain's intent to conspire to injure PFS, and it was not Donohue's impression that it was Raduechel's or Spain's intent to injure PFS. Rather, Donohue stated he believed Raduechel and Spain were staying at PFS after consulting Donohue, and Donohue would not have worked with Raduechel and Spain if he knew Raduechel and

-14-

Spain were acting to injure PFS. Donohue further testified (1) Donohue did not create a business plan, or financial projections, for Raduechel and Spain; (2) Donohue only analyzed the general flow of the calculations Raduechel and Spain provided Donohue; (3) Donohue did not encourage, or actively participate, in the formation of D&B Solutions; (4) Donohue was not aware of the use of confidential information from the documents Raduechel provided Donohue; (5) Donohue advised Raduechel to get legal advice when he recognized possible confidential information on the documents; and (6) although Donohue inadvertently retained the documents Raduechel provided him, Donohue never used, reviewed, or published the documents after identifying the possible legal concern with the documents.

Chantland testified, under professional accounting standards, Donohue's ability and responsibility to determine whether Raduechel and Spain were breaching their fiduciary duties was beyond Donohue's province as an accountant. Chantland also opined Donohue acted within all professional accounting standards during his service to Raduechel and Spain.

Based upon Donohue's and Chantland's testimonies, the record contains sufficient evidence to substantiate the jury verdict because Donohue's and Chantland's testimonies reasonably show the Accounting Defendants did not knowingly and voluntarily enter into a scheme with Raduechel and Spain to breach Raduechel's and Spain's fiduciary duties or misappropriate trade secrets. The district court did not abuse its discretion by denying PFS's motion for a new trial on the conspiracy claim against the Accounting Defendants, nor does a miscarriage of justice exist.

### b. Banking Defendants

Similar to its finding for the Accounting Defendants, the district court also found PFS was not entitled to a new trial on the conspiracy claim against the Banking Defendants. The district court reasoned Hicks's testimony established the Banking

Defendants were not aware of an unlawful scheme by Raduechel and Spain to breach fiduciary duties or misappropriate trade secrets. The district court concluded Hicks's testimony provided a basis for the jury verdict because the evidence reasonably showed the Banking Defendants did not possess the requisite knowledge to enter into a conspiracy. We agree with the district court.

Like Donohue, Hicks testified he never heard Raduechel or Spain state it was Raduechel's and Spain's intent to injure PFS, and Hicks never had the impression it was Raduechel's and Spain's intent to conspire against, or injure, PFS. Hicks explicitly stated he never had an agreement with Raduechel, Spain, and Donohue to injure PFS. Hicks also testified he believed Raduechel and Spain were employees at-will, he did not know about a contract for Spain, and he believed Raduechel's contract with PFS had expired. Hicks further testified he had no knowledge of, and never saw or reviewed, the documents which PFS alleged contained trade secrets.

The Banking Defendants' expert, Michael Guttau (Guttau), testified it was relatively frequent for a bank to consider a loan application and grant a loan to an employee who wants to start a competing business with an employer, even before the employee has resigned from the employer. Guttau also testified it would not be a "red flag" for a bank to have two top executives come to a bank and apply for a loan to start a business which would compete with the executives' employer. Guttau further attested to the banking procedures used by the Banking Defendants, and after reviewing the Banking Defendants' file for D&B Solutions, Guttau opined the information on Raduechel's and Spain's loan application would not trigger concern over the confidentiality of the information.

A reasonable jury could find Hicks's and Guttau's testimonies credible, and based upon their testimonies, find the Banking Defendants did not have knowledge of a scheme by Raduechel and Spain to breach fiduciary duties or misappropriate trade secrets. Thus, Hicks's and Guttau's testimonies provide a basis for the jury's verdict,

-16-

and the district court's denial of PFS's motion for a new trial on the conspiracy claim against the Banking Defendants did not create a miscarriage of justice.

Finally, we are not persuaded by PFS's contention that the district court's order erroneously relied on "advice of counsel" and "mistake of law" defenses. We do not read the district court's order as basing the ruling on these defenses, and we choose not to address further PFS's allegations. We conclude the district court did not erroneously deny PFS's motion for a new trial on the conspiracy claim.

### 2.    Jury Instruction

PFS also contends the district court's jury instruction on the conspiracy claim was erroneous. PFS asserts its theory on the conspiracy claim was that Raduechel and Spain "were using unlawful means (soliciting one another) to accomplish" the lawful end of "forming D&B Solutions." PFS claims the district court failed to instruct the jury on PFS's theory because the district court declined to use PFS's proposed jury instruction, which would have instructed the jury that "[a] conspiracy is a combination of two or more persons to accomplish, through concerted actions, an unlawful end or a lawful end by an unlawful means."

The district court's instruction defined conspiracy as follows:

> A conspiracy is an agreement of two or more persons to commit a wrong against another. The agreement can be oral or written, informal or formal, and need not be detailed. The agreement need not be expressed in words and may be implied and understood to exist from the conduct itself. It may be proved by direct or circumstantial evidence. Merely because two or more persons associate with each other, or meet to discuss common interests or goals does not, by itself, establish a conspiracy.

> A person participates in a conspiracy when the person joins the agreement with the intention to accomplish the wrongful act. A

-17-

participant need not know all the details of the agreement nor all of the other participants. One who innocently furthers wrongful conduct by another does not participate in a conspiracy.

"We review a district court's jury instructions for abuse of discretion." Mems v. City of St. Paul Dep't of Fire and Safety Servs., 327 F.3d 771, 781 (8th Cir. 2003) (citation omitted). "[W]e ask 'whether the instructions, taken as a whole and viewed in the light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury.'" Id. (quoting Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 711 (8th Cir. 2001)). "'[A] district court has broad discretion in instructing the jury, and jury instructions do not need to be technically perfect or even a model of clarity.'" Id. (quoting B&B Hardware, Inc. v. Hargis Indus., Inc., 252 F.3d 1010, 1012 (8th Cir. 2001)). "We will reverse only upon a finding that the instructional error affected the substantial rights of the parties." Id. (citing Wheeling, 254 F.3d at 711).

The district court's conspiracy instruction was not an abuse of discretion. The instruction followed the Iowa Model Civil Jury Instruction defining both civil conspiracy and participation in a civil conspiracy. See Iowa Model Civil Jury Instructions 3500.2, 3500.3. This instruction is consistent with Iowa law. See id. (citing Iowa authority); see also Robbins v. Heritage Acres, 578 N.W.2d 262, 265 (Iowa Ct. App. 1998) ("A civil conspiracy requires proof of an agreement or understanding to effect a wrong against another." (citation omitted)); Ezzone, 525 N.W.2d at 398 ("For conspiracy, an agreement must exist between the two persons to commit a wrong against another.").

Because the instructions stated, "[a] conspiracy is an agreement of two or more persons to commit a wrong against another," the instructions allowed the jury to find for or against PFS on its theory that the Banking and Accounting Defendants were agreeing to perpetrate the wrong of breach of fiduciary duty or misappropriation of trade secrets. The instruction was broad enough to encompass situations involving

-18-

"an unlawful end or a lawful end by unlawful means." Robbins, 578 N.W.2d at 265. Although PFS would have preferred more specific language, the district court's instruction fairly and adequately presented the Iowa conspiracy claim to the jury, and was not erroneous. See Campbell v. Vinjamuri, 19 F.3d 1274, 1277 (8th Cir. 1994) ("The trial court has a great deal of discretion in framing the jury instructions and the court need not give the exact language desired by the parties." (citing McIlroy v. Dittmer, 732 F.2d 98, 102-03 (8th Cir. 1984))). The instruction provided PFS with sufficient guidance to argue PFS's case and themes.

### C.    Aiding and Abetting Claim

Similar to the conspiracy claim, PFS charges the district court erroneously denied PFS's motion for a new trial on the aiding and abetting claim against the Accounting and Banking Defendants. PFS also argues the district court gave an erroneous instruction on the aiding and abetting claim.

### 1.    New Trial Motion

The district court found, based on the testimonies of Donohue and Hicks, the greater weight of the evidence established the Accounting and Banking Defendants did not have the requisite knowledge for aiding and abetting. The district court thus concluded PFS was not entitled to a new trial on this claim.

PFS now asserts the district court's ruling was improper. PFS claims it was entitled to a new trial because the Accounting and Banking Defendants were highly sophisticated business people whom no reasonable jury could find did not understand Raduechel and Spain were engaged in wrongful conduct. PFS thus maintains, because the Accounting Defendants provided assistance on the business plan for D&B Solutions and the Banking Defendants extended credit to D&B Solutions, no reasonable jury could conclude the Accounting and Banking Defendants were not liable for aiding and abetting, and the evidence "established aiding and abetting liability as a matter of law."

-19-

We review PFS's contention for abuse of discretion. See Keeper, 130 F.3d at 1314. Under Iowa law, a claim for aiding and abetting another's wrongful act can be maintained if a person "'knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.'" Reilly v. Anderson, 727 N.W.2d 102, 107 (Iowa 2006) (quoting Restatement (Second) of Torts § 876(b) at 315 (1979)).

As noted in our discussion of the conspiracy claim, Donohue testified he was not aware of Raduechel's and Spain's breach of fiduciary duties or misappropriation of trade secrets, and stated he would not have worked with Raduechel and Spain if he had known of any misconduct. Chantland corroborated Donohue's testimony by stating Donohue's ability and responsibility as an accountant to comprehend breach of fiduciary duties or misappropriation of trade secrets is limited. Similarly, Hicks testified to an unawareness of any breach of fiduciary duties or misappropriation of trade secrets by Raduechel and Spain. Guttau opined the Banking Defendants' file for D&B Solutions was handled properly and generally would not raise concerns for breach of fiduciary duties or misappropriation of trade secrets. This evidence provides a reasonable basis for a jury to conclude the Accounting and Banking Defendants did not know Raduechel's and Spain's conduct was improper, and the district court was within its discretion to deny PFS's motion on the aiding and abetting claim.

### 2. Jury Instruction

PFS also challenges the district court's jury instruction on the aiding and abetting claim. We give high deference to the district court's jury instructions, and only reverse if there has been an abuse of discretion. See Mems, 327 F.3d at 781.

As one element of the aiding and abetting claim, the district court instructed the jury PFS was required to prove "[t]he defendant whose case you are considering knew that the conduct of Raduechel and/or Spain constituted a breach of fiduciary duty to [PFS] and/or a misappropriation of [PFS]'s trade secrets." PFS argues this portion of

the district court's instruction required PFS to prove the Accounting and Banking Defendants understood, as a matter of law, that Raduechel and Spain were breaching fiduciary duties. PFS contends, relying on FDIC v. First Interstate Bank of Des Moines, 885 F.2d 423 (8th Cir. 1989) and Tubbs v. United Central Bank, 451 N.W.2d 177 (Iowa 1990), that Iowa law and public policy do not require proof of actual knowledge of the wrongdoing, but only require proof of a "general awareness" of the wrongdoing. PFS thus asserts the district court's instruction placed an erroneously high burden on PFS to prove the aiding and abetting claim.

PFS's argument is unpersuasive. Similar to the district court's conspiracy instruction, the district court's aiding and abetting instruction closely tracked the Iowa Model Civil Jury Instruction for aiding and abetting. See Iowa Model Civil Jury Instruction 3500.4. This instruction is grounded in Iowa law. See id. (citing Iowa authority); see also Ezzone, 525 N.W.2d at 398 ("As to aiding and abetting, there must be a wrong to the primary party, knowledge of the wrong on the part of the aider, and substantial assistance by the aider in the achievement of the primary violation." (citing Tubbs, 451 N.W.2d at 182)).

Further, PFS's reliance on First Interstate and Tubbs is misplaced. In First Interstate, 885 F.2d at 429-30, this court discussed the "general awareness" standard in jury instructions for a claim involving federal law developed under Section 10(b) of the Securities and Exchange Act of 1934, not Iowa law. First Interstate, 885 F.2d at 429-30. Similarly, in Tubbs, 451 N.W.2d at 183 (citing First Interstate, 885 F.2d at 430-31), the Supreme Court of Iowa acknowledged "general awareness" has been the recognized standard in federal securities cases. The Tubbs court then analyzed the merits of an Iowa common law aiding and abetting claim *assuming* "'general awareness' by an alleged aider and abettor [was] sufficient to constitute knowledge." Tubbs, 451 N.W.2d at 183. The Tubbs court did not address or adopt the "general awareness" standard under Iowa common law because, even under the "more liberal definition" of "general awareness," knowledge was not established in that case. Id.

Neither First Interstate nor Tubbs clearly establishes a "general awareness" standard for Iowa common law aiding and abetting, and the district court did not abuse its discretion in following Iowa Model Civil Jury Instruction 3500.4 and excluding any proposed "general awareness" language from the aiding and abetting jury instruction.

### D.    Admission of Expert Testimonies

PFS next contends the district court erred in allowing the expert testimonies of Chantland and Guttau.  PFS claims Chantland's and Guttau's expert testimonies were irrelevant because the case was an intentional tort case rather than a negligence or professional malpractice case.  PFS also argues the testimonies of Chantland and Guttau were prejudicial because the district court gave an erroneous jury instruction on knowledge for the aiding and abetting claim.

"We will reverse the district court's decision to admit expert testimony only if it amounts to a prejudicial abuse of discretion."  Rottlund Co. v. Pinnacle Corp., 452 F.3d 726, 731 (8th Cir. 2006) (citing Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1058-59 (8th Cir. 2005)).  Under Fed. R. Evid. 702, an expert witness with specialized knowledge may testify if the testimony will assist the trier of fact.  Rule 702 is a rule "'of admissibility rather than exclusion.'" Jenson v. Eveleth Taconite Co., 130 F.3d 1287, 1298 (8th Cir. 1997) (quoting Arcoren v. United States, 929 F.2d 1235, 1239 (8th Cir. 1991)).

Under the conspiracy and aiding and abetting claims, the knowledge, or state of mind, of the Accounting and Banking Defendants was an issue the jury was required to determine.  See Wright, 652 N.W.2d at 174 (stating, a conspiracy must contain an agreement which "results only from a defendant's *knowing and voluntary* participation in a common scheme to take action" (emphasis added)); Reilly, 727 N.W.2d at 107 (explaining, an aiding and abetting claim involves a defendant who "'*knows* that the other's conduct constitutes a breach of duty'" (quoting Restatement (Second) of Torts § 876(b) (emphasis added)).

Chantland's and Guttau's testimonies were relevant to the knowledge and state of mind of the Accounting and Banking Defendants for the conspiracy and aiding and abetting claims. Chantland testified about Donohue's professional responsibilities and capacities, and concluded Donohue acted in compliance with professional accounting standards. Likewise, Guttau testified the Banking Defendants correctly handled the file for D&B Solutions under prevailing Iowa banking standards, and the file contained no "red flags" which would notify the Banking Defendants that Raduechel and Spain were engaged in misconduct. Chantland's and Guttau's testimonies placed the actions and testimonies of the Accounting and Banking Defendants in the professional contexts involved in this case, and provided a basis from which the jury could evaluate the knowledge and state of mind of the Accounting and Banking Defendants during their service to Raduechel and Spain. Although conspiracy and aiding and abetting are intentional torts, the knowledge and state of mind of the Accounting and Banking Defendants were issues in these claims, and the district court did not abuse its discretion in finding Chantland's and Guttau's testimonies were relevant and would assist the jury.

Because we find there was no error in the district court's aiding and abetting jury instruction, PFS's claim that Chantland's and Guttau's testimonies were prejudicial is without merit. The district court did not err in admitting the testimonies of Chantland and Guttau.

### E.    Denial of Equitable Relief

PFS's final argument is the district court abused its discretion in denying PFS equitable relief in the form of disgorgement of Raduechel's and Spain's salaries during the time Raduechel and Spain were breaching their fiduciary duties. PFS contends public policy surrounding both deterrence and duties of fiduciaries mandates Raduechel and Spain forfeit their salaries. PFS also asserts salary forfeiture is warranted as a matter of restitution separate from the jury's verdict.

"We review a district court's denial of equitable relief for an abuse of discretion." Rodgers v. City of Des Moines, 435 F.3d 904, 909 (8th Cir. 2006) (citing Midwest Oilseeds, Inc. v. Limagrain Genetics Corp., 387 F.3d 705, 715 (8th Cir. 2004)). Under Iowa law, "[t]he doctrine of unjust enrichment is based on the principle that a party should not be permitted to be unjustly enriched at the expense of another or receive property or benefits without paying just compensation." Iowa Dep't of Human Services ex rel. Palmer v. Unisys Corp., 637 N.W.2d 142, 154 (Iowa 2001) (citation omitted). One of three elements a district court is required to analyze for an unjust enrichment claim is whether "it is unjust to allow the defendant to retain the benefit *under the circumstances*." Id. at 154-55 (emphasis added).

The district court found it would not be equitable to require Raduechel and Spain to disgorge their salaries because (1) Raduechel and Spain received no profits from D&B Solutions, (2) Raduechel and Spain did not receive their bonuses from PFS, (3) Raduechel and Spain suffered severe financial hardship as a result of D&B Solutions's dissolution, (4) Raduechel and Spain only acquired lower paying employment, and (5) the preliminary injunction was a sufficient sanction for Raduechel's and Spain's misconduct.

PFS conceded in its brief the district court's factual findings were correct. Based upon these findings, the district court was within its broad discretion to conclude the equities of this case did not require Raduechel and Spain to disgorge their 2004 salaries. The district court therefore did not commit error in denying PFS's unjust enrichment claim.

### F.    Raduechel's and Spain's Cross Appeal
### 1.    Motion to Dismiss
On cross appeal, Raduechel argues the district court improperly dismissed his counterclaim for payment of a bonus. Raduechel contends his IWPCA claim and breach of written contract claim could not be dismissed on a Fed. R. Civ. P. 12(b)(6)

-24-

motion because Raduechel's employment contract contains ambiguities. Raduechel also asserts summary disposition of his breach of oral contract and promissory estoppel claims was improper because PFS officials made promises that Raduechel would receive his bonus, which promises were independent of, and subsequent to, his written employment contract.

"This court reviews de novo the grant of a motion to dismiss, taking all facts alleged in the complaint as true." Charles Brooks Co. v. Georgia-Pacific, LLC, 552 F.3d 718, 721 (8th Cir. 2009) (internal marks and citations omitted). "Dismissal is proper where the plaintiffs' complaint fails to state a claim upon which relief can be granted." Id. (citation omitted). "[T]he complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal." Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007) (internal marks and quotation omitted).

Raduechel failed to raise the specific arguments he makes on appeal to the district court when opposing PFS's motion to dismiss Raduechel's counterclaim. We cannot say Raduechel waived these arguments, however, because the district court did address the arguments in its order on Raduechel's motion to reconsider the dismissal of Raduechel's counterclaim. See Anderson v. Unisys Corp., 52 F.3d 764, 765 (8th Cir. 1995) (deciding not to address issues which had not been passed on by the district court).

The district court found Raduechel's employment contract did not contain ambiguities, and did not conflict with or diminish PFS's discretion in paragraph 1 of the General Provisions of Raduechel's employment contract which allowed PFS to withhold all of Raduechel's bonus if Raduechel's "performance [was] unsatisfactory" or his "managerial attitude was not in the best interest of [PFS]." Thus, the district court concluded the alleged ambiguities did not require the district court to reverse its

initial decision to dismiss the claims involving Raduechel's written employment contract.

The district court also found the alleged oral contracts were not independent contracts, but rather assurances which "re-state the language memorialized in paragraph 15 of [Raduechel's employment contract], protecting bonuses *to which a participant otherwise would be entitled* in the event of a change in control." Finally, the district court, citing Iowa law, held dismissal of Raduechel's promissory estoppel claim was appropriate because the use of promissory estoppel is limited to situations not involving a written contract. Because Raduechel had an employment contract and did not allege PFS made promises for compensation outside the employment contract, Raduechel could not recover under a theory of promissory estoppel. We agree with the district court's well-reasoned analysis of this issue.

The provisions Raduechel cites in his written agreement do not create ambiguities, or limit PFS's ability to withhold Raduechel's bonus if PFS finds, in its discretion, Raduechel's actions were unsatisfactory or against the interest of PFS. See Vigoro, 82 F.3d at 791 (holding, absent an allegation of "fraud, bad faith, or a grossly mistaken exercise in judgment," an employee was not entitled to payment of a bonus when a contract term gave the employer discretion to withhold payment of the bonus based upon the employee's disloyal conduct (quoting Golden v. Kentile Floors, Inc., 512 F.2d 838, 847 (5th Cir. 1975))). Further, Raduechel's allegations do not sufficiently show the statements of PFS officers created oral contracts or warrant promissory estoppel because the alleged statements, at most, restated the terms of Raduechel's written compensation agreement. See Blackledge v. Puncture Proof Retread Co., 181 N.W. 662, 663-64 (Iowa 1921) (stating, an "oral contract must be independent in fact, and must not be a contradiction, modification, or qualification of the written contract, either as to its enforcement, its consideration, or its executory obligation"); Schoff v. Combined Ins. Co. of Am., 604 N.W.2d 43, 48 (Iowa 1999) (explaining promissory estoppel should be used when a contract does not exist and

there is "a clear and definite oral agreement" (internal marks and citations omitted)). We agree with the district court's analysis; therefore, the district court did not err in dismissing Raduechel's counterclaim.

### 2. Motion for Summary Judgment

Raduechel and Spain also argue the district court erred in granting PFS partial summary judgment as to Raduechel's and Spain's liability on the breach of fiduciary duties and misappropriation of trade secrets claims. Because we affirm the district court's judgment upholding the jury verdict in favor of Raduechel and Spain on these claims and find PFS was not entitled to a new trial, Raduechel and Spain have conceded this issue is essentially moot, and we need not address the issue further.[3] See Hickman v. Missouri, 144 F.3d 1141, 1142 (8th Cir. 1998) ("'When a case . . . no longer presents an actual, ongoing case or controversy, the case is moot and the federal court no longer has jurisdiction to hear it.' This requirement applies to all stages of the litigation." (quoting and citing Neighborhood Transp. Network, Inc. v. Pena, 42 F.3d 1169, 1172 (8th Cir. 1994))).

---

[3]Regardless, Raduechel's and Spain's challenge to the district court's grant of summary judgment was waived when (1) Raduechel and Spain did not introduce their arguments to the district court until their motion for reconsideration of the district court's grant of summary judgment, and (2) the district court did not address the arguments on the motion to reconsider. See Anderson, 52 F.3d at 765 (declining to address an argument which was raised in the district court for the first time in a motion for reconsideration and which was not adjudicated by the district court).

## III.  CONCLUSION

The district court's rulings and judgment are affirmed.

_____