**CRITERION 508 SOLUTIONS, INC., Plaintiff,**

v.

**LOCKHEED MARTIN SERVICES, INC., Defendant.**

No. 4:07–cv–00444–JAJ–CFB.

United States District Court, S.D. Iowa, Central Division.

Sept. 29, 2009.

Gordon R. Fischer, Bradshaw Fowler Proctor & Fairgrove, Des Moines, IA, for Plaintiff.

David A. Tank, Megan C. Dempsey, William J. Miller, Dorsey & Whitney LLP, Des Moines, IA, for Defendant.

## ORDER

JOHN A. JARVEY, District Judge.

This matter comes before the court pursuant to Defendant Lockheed Martin Services, Inc.'s ("Lockheed") February 16, 2009, Motion for Summary Judgment (Dkt. No. 78). On August 30, 2007, Plaintiff

Criterion 508 Solutions, Inc. ("Criterion") filed a petition in Polk County Iowa District Court, which Lockheed removed to federal court on September 28, 2007 (Dkt. No. 1). Criterion filed a Brief in Resistance to Defendant's Motion for Summary Judgment on April 14, 2009 (Dkt. No. 95-2), as well as a Statement of Undisputed Facts (Dkt. No. 95-3) and a Response to Lockheed's Facts (Dkt. No. 95-4). On May 11, 2009, Lockheed filed a Response to Criterion's Facts (Dkt. No. 106) and a Reply Brief (Dkt. No. 112). Criterion responded with a Sur Reply on June 22, 2009 (Dkt. No. 121) and an Addendum to the Sur Reply on June 25, 2009 (Dkt. No. 123). For the reasons set forth below, the court grants summary judgment on Counts I, III, and VIII, and grants in part and denies in part summary judgment on Counts II and V.

## I. STATEMENT OF MATERIAL FACTS [1]

Criterion is an Iowa company specializing in technological "accessibility solutions" in compliance with Section 508 of the Rehabilitation Act. Section 508 requires federal agencies to make all electronic and information technology accessible to persons with disabilities. Specifically, Criterion specializes in "independent third-party validation of Web sites, Web applications, software, PDF documents, and/or fillable forms." (Pl. Facts, dkt. 95-3 at 1.) Criterion also offers on-site training and e-learning courses. (Pl. Facts, dkt. 95-3 at 2.)

Angy Brooks created an S-corporation called Brooks Web Services ("BWS") in November 2000. BWS began working for Criterion in 2001 and performed Section 508 compliance work, including but not limited to, technical development, template creation, documentation, and technical training development. (Def. Appx. at 129.) BWS signed a Subcontractor's Services Agreement with Criterion on May 23, 2004. (Def. Appx. at 147-50.) The Agreement included a confidentiality provision, a "right to title" for all work product, and a restrictive covenant preventing direct or indirect competition for two years following termination. (Def. Appx. at 148-49.) Criterion gave BWS 60-days' notice of termination in May 2005. (Def. Appx. at 129.) On June 30, 2006, BWS filed suit against Criterion for allegedly unpaid invoices in Polk County District County. (Pl.'s Br. in Resistance, dkt. 95-2 at 9.) Criterion responded with counterclaims and the court ultimately granted judgment for Criterion. (Pl.'s Br. in Resistance, dkt. 95-2 at 18.) When BWS failed to pay the judgment, Criterion successfully pierced BWS's corporate veil and Brooks was held personally liable for the judgment against BWS on June 27, 2008. (Pl.'s Response to Def.'s Statement of Undisputed Facts, dkt. 95 at 2; Pl.'s Br. in Resistance, dkt. 95-2 at 22.)

During the 60-day notice period of termination and before Brooks' end date of July 2005, Brooks began looking for new employment. In May, almost immediately after Criterion gave her notice of termination, Brooks responded to a job advertisement that Global Commerce & Information ("GCI") had posted. GCI partners with Lockheed Martin Services [2] ("Lockheed") "to locate and hire people who will provide services to Lockheed Martin." (Def. Facts, dkt. 78-2 at 2; *see also* Def. Appx. at 160-207.) GCI sent Brooks' resume to Kathy Plourd, a Lockheed em-

---

1. These facts are either undisputed or if disputed in good faith, taken in the light most favorable to Criterion.

2. Lockheed Martin Services is a Lockheed Martin Company. (Def. Appx. at 00160.)

ployee, on May 13, 2005. (Pl. Appx. at 9). Plourd interviewed Brooks[3] (Pl.'s St. of Undisputed Facts, dkt. 95–3 at 10) and on May 23, 2005, BWS entered into a Subcontractor Agreement with GCI. (Def. Appx. at 151.)

From that point on, Brooks performed various subcontractor assignments associated with Section 508 compliance for the Social Security Administration ("SSA"). (Pl.'s St. of Undisputed Facts, dkt. 95–3 at 12–14.) The SSA paid Lockheed a total of $345,723 for Brooks' work. (Pl.'s St. of Undisputed Facts, dkt. 95–3 at 14.) During Brooks' employment with Lockheed, Brooks was at all times bound by the terms of a two-year restrictive covenant. (Pl.'s St. of Undisputed Facts, dkt. 95–3 at 14.) Thus, Criterion contends that Brooks' Section 508 work product for SSA/Lockheed was a direct result of the trade secrets and proprietary information Brooks learned while working for Criterion. (Pl.'s St. of Undisputed Facts, dkt. 95–3 at 14.)

### A. Material Facts Relating to the Nature of Brooks' Employment with Lockheed

The parties dispute whether Brooks was a full-time employee or an independent contractor for Lockheed. Lockheed argues that Brooks was not a Lockheed employee and therefore it is not vicariously liable for the tortious acts of independent contractors. Criterion disputes Lockheed's characterization of Brooks' employment and maintains that Lockheed is responsible for Brooks' actions because she was an employee.

Lockheed asserts that Brooks was an independent contractor because of the Subcontractor's Services Agreement she signed with GCI on May 23, 2004. The Agreement states that she is not an employee to GCI or to any of its clients, nor will she receive any employee benefits.[4] Criterion admits that Brooks signed the agreement, but denies that it "implies Brooks was a contractor or subcontractor." (Pl. Resp. to Def.'s Facts, dkt. 95–4 at 5.) Lockheed also asserts that Brooks received wages from GCI and GCI withheld employment taxes. (See Def. Appx. at 139.) In her deposition, Brooks confirmed that GCI paid her for Lockheed-related work. (Def. Appx. at 212.) Additionally, Brooks stated that she used the SSA computers and worked at SSA offices, not at Lockheed offices. (Def. Appx. at 214.)

However, Criterion asserts that Brooks was, at all times, a full-time employee of Lockheed. Although GCI referred Brooks to Lockheed (Pl. Appx. at 9), Criterion states that Brooks' job interview was with Kathy Plourd, an employee for Lockheed, and not GCI. (Def. Appx. at 143.) Additionally, Brooks received work assignments from Lockheed and submitted her work for review by Plourd. Lockheed agrees that Plourd "acted as a supervisor and/or administrator to Brooks and ensured that Brooks' project for the SSA was fulfilled." (Def. Facts, dkt. 78–2 at 4.)

---

3. The facts are not clear as to the order of Brooks' hiring process; namely, whether Brooks was interviewed by Plourd before or after she signed the Subcontractor Agreement with GCI.

4. The Agreement states:
 The parties to this Agreement agree that the relationship created by this Agreement is that of broker-independent contractor. Contractor agrees and has advised its personnel that Contractor and its personnel are not employee(s) of Global Commerce & Information, Inc. or the Client and are not entitled to (and also hereby waive) any benefits provided or rights guaranteed by Global Commerce & Information, Inc. or the Client, or by operation of law, to their respective employees. . . .
 (Def. Appx. at 153.)

However, Lockheed states that while Plourd was a supervisor, she did not "tell [Brooks] how to do the work," nor did she "dictate to [Brooks] the means or methods [Brooks] [was] to follow to accomplish the goals set forth in the project." (Def. Appx. at 214A, 215.) Criterion objects and points to emails from Plourd to bolster its argument that Brooks was actually an employee of Lockheed. In an email from Brooks to Plourd, Brooks stated, "[S]ince I will be held responsible for the deliverables of the word order, I want to capture them in writing so that we're all in agreement as to what is expected from me . . . ." (Pl. Mat. Facts, dkt. 95–3 at 10.) In another email from Brooks to Plourd, Brooks stated, "I WELCOME and ENCOURAGE your criticism and comments." (Pl. Mat. Facts, dkt. 95–3 at 11) (emphasis in original.) Lastly, Brooks also sought Plourd's "input and feedback." (Pl. Mat. Facts, dkt. 95–3 at 11.) Other factors also indicate Lockheed's involvement in financial matters. For example, Criterion contends that Brooks sought Lockheed's permission to attend a conference and to receive reimbursement from Lockheed for certain expenses. (Pl. Mat. Facts, dkt. 95–3 at 11.) Brooks' email signature line also included Lockheed's name and Brooks recorded her hours using the Lockheed timecard system. (Pl. Mat. Facts, dkt. 95–3 at 11.)

### B. Material Facts Relating to Lockheed's Knowledge of Brooks' Criterion Work

Whether or not Lockheed knew about Brooks' restrictive covenant with Criterion remains in dispute. Lockheed claims that it did not intentionally interfere with Brooks' restrictive covenant because it did not know that Brooks had any contractual limitations from previous employment. Criterion asserts that Lockheed intentionally interfered with Brooks' restrictive covenant and that it hired Brooks to gain proprietary Criterion information. Criterion contends that Lockheed had ulterior motives in hiring Brooks because Lockheed knew it could gain the functional equivalent of Criterion's products by hiring Brooks to design new Section 508 products for clients.

Lockheed states that Brooks never "inform[ed] [GCI] that she had a restrictive covenant, noncompete agreement, or confidentiality agreement as part of her prior relationship and/or contract with Criterion." (Def. Facts, dkt. 78–2 at 3; see also Def. Appx. at 212–13.) Brooks signed an Employee Consent Agreement which stated, "Contractor Employee acknowledges . . . that he/she is not restricted by any employment or other agreement from providing services to Client, and understands that any misstatements or lack of candor by Contractor Employee of his/her qualifications or availability may be grounds for immediate termination by the Client." (Def. Appx. at 157.) Lockheed also states that it never had a copy of Brooks' subcontractor services agreement with Criterion. (Def.'s Resp. to Pl.'s Statement of Disputed Facts, dkt. 106 at 21.)

Criterion denies everything related to Lockheed's claim that it was unaware of Brooks' employment agreement with Criterion. Criterion suggests an email from Brooks to Plourd provides evidence that Lockheed was aware of the restrictive covenant. In this email, Brooks stated, "If you recall, I worked for Criterion Solutions prior to coming to work as a contractor for [Lockheed]. I told you at that time that this was not a violation of the contract I had with Criterion, since [Lockheed] wasn't a client of Criterion's, nor was the SSA. This was, and still is, true." (Pl. Resp. to Def.'s Facts, dkt. 95–4 at 9; see also Pl.'s Appx. 1–2.) Criterion challenges Brooks' credibility, urging the court to

take judicial notice of her dishonesty and unethical conduct.

While performing services for Lockheed/GCI, Brooks' projects included work for the SSA. Her tasks included the creation of handbooks to explain to its employees: "(i) the process of how to make/convert a Word document to a PDF file and (ii) how to make a PDF file accessible to people with disabilities." (Def. Facts, dkt. 78–2 at 4; *see also* Def. Appx. 216.) The record is conflicting regarding the extent of overlapping knowledge between Brooks' knowledge-base derived from Criterion and her subsequent work at Lockheed. Criterion asserts that Brooks worked on "at least 10 Section 508/accessibility projects for [Lockheed]." (Pl. Resp., dkt. 95–4 at 18.) Lockheed argues that there were only four assignments and Criterion is artificially inflating the number by including revisions. (Def.'s Resp. to Pl.'s Statement of Disputed Facts, dkt. 106 at 25.)

### C. Criterion and BWS Prior State Court Law Suit

Additionally, the Polk County state court suit between Criterion and BWS/Brooks presents a controversy as to whether the state suit operates to preclude Criterion's suit against Lockheed. Lockheed claims that Criterion is barred by claim preclusion from pursuing matters already resolved in state court, such as unjust enrichment, misappropriation of trade secrets, and copyright infringement. Criterion contends that Lockheed cannot satisfy the elements of claim preclusion. In essence, Criterion asserts that it can still adjudicate certain claims against Lockheed, despite Lockheed's allegations that several of the current claims are substantially similar to claims made in the state court suit with Brooks.

On June 30, 2006, BWS sued Criterion in Iowa District Court in and for Polk County. BWS alleged breach of contract, an open account, and quantum merit. BWS, through Brooks, claimed that Criterion failed to pay BWS for approximately $63,000 of work. (Def. Appx. at 1–3.) On July 12, 2006, Criterion counterclaimed, claiming breach of fiduciary duty, unjust enrichment, breach of written contract, breach of restrictive covenant, negligence, and conversion. (Def. Appx. at 6–11.) The case went to a jury trial held June 4–6, 2007. At the close of Brooks' evidence, the court granted Criterion's motion for directed verdict on all three counts of Brooks' petition and dismissed the counterclaims related to breach of fiduciary duty, and portions of the negligence and breach of confidentiality claims. (Def. Appx. at 17–18.) Regarding the unjust enrichment claim, the court[5] found,

> Criterion 508 failed to prove that Plaintiff received funds that she unjustly deserved. Plaintiff performed services while working as a subcontractor for Criterion 508, and was partially paid for those services. Those funds were rightfully due and owing to Plaintiff. Plaintiff in fact performed many services for Defendant which were not paid for by the Defendant because she submitted the bills too late.

(Def. Appx. at 19.) The court found for Criterion on the breach of contract, breach of restrictive covenant, negligence, and conversion claims. As to the breach of contract claim, the court found that Brooks violated the confidentiality provision of her contract in several ways—she had revealed information to a non-party, Georgia Spurgeon; posted an article online detailing Criterion's "PDF testing and repair technique;" and had posted Criterion's "busi-

---

**5.** The Honorable Artis J. Reis, District Judge, Fifth Judicial District of Iowa.

ness methods on the internet, available for anyone, for free access." (Def. Appx. at 20–22.) The court also found that the covenant not to compete was valid and enforceable, and that Brooks had violated it in several ways. The court found that the non-compete covenant applied to Brooks from the date of her termination, July 17, 2005, to on or about July 17, 2007. (Def. Appx. at 27.) She violated the covenant by posting an advertisement for web and PDF design for 508 compliancy, as the court stated, "[A] logical inference is made that [Brooks] was intending for people who were interested in PDF accessibility to click on this link." (Def. Appx. at 28.) Additionally, Brooks' actions of creating and posting on the SSA's website a desk guide for creating accessible documents used "business methods and services which Criterion 508 Solutions specialized and developed." (Def. Appx. at 29.) An additional online posting on the internet "included more of Criterion 508 Solutions' business methodologies, revealed without Criterion 508 Solutions' permission." (Def. Appx. at 29.) The court found that Brooks had learned all of this confidential information while being employed by Criterion. However, Criterion failed in proving damages (both liquidated and otherwise) for either the breach of contract or restrictive covenant claims because it failed to present evidence supporting more than a speculative loss of income. (Def. Appx. at 22, 30, 32.) The court also rejected Criterion's claim that Brooks had violated the restrictive covenant while she worked for Lockheed [6] because Brooks never worked for Lockheed while still employed as a subcontractor for Criterion. (Def. Appx. at 30.)

Lastly, the court held that Brooks had been negligent in failing to complete a project and then retaining materials needed for completion. The court awarded Criterion $11,200 that it had been forced to pay for completion bonuses. (Def. Appx. at 34.) Likewise, Brooks' acts of retaining documents and registering Criterion508.net for her own company were found to be intentional acts of conversion. (Def. Appx. at 36.) Criterion again failed to establish lost income by a preponderance of the evidence and its claim for damages was denied. (Def. Appx. at 36.)

## II. SUMMARY OF THE ARGUMENTS

Lockheed asks the court to consider summary judgment on the five remaining Criterion counts: Intentional Interference with a Contract (Count I), Unjust Enrichment (Count II), Misappropriation of Trade Secrets (Count III), Copyright Infringement (Count V), and Civil Conspiracy to Breach Fiduciary Duties (Count VIII). Lockheed bases its motion for summary judgment on several theories: the prior state court judgment precludes the vicarious liability claims (Counts II, III, and V), the vicarious liability claims are barred because Brooks was an independent contractor for Lockheed (Counts II, III, and V), there is insufficient evidence to establish a prima facie case (Counts I, II, and VIII), the copyright claims are barred because the copyrights were not registered (Count V), and the state law claims are preempted by the copyright statute (Counts I and II).

Criterion presents several arguments as to why summary judgment is inappropri-

---

**6.** "According to [Criterion], Lockheed Martin became a client of Criterion 508 Solutions on or about July 25, 2006, when Lockheed Martin purchased one eLearning course. Angy Brooks did not perform services for Lockheed Martin which had been provided to Lockheed Martin by her as a subcontractor while working for Criterion 508 Services." (Def. Appx. at 30.)

ate. Criterion argues that Brooks was a Lockheed employee and not an independent contractor, the vicarious liability claims are not precluded by the prior state court judgment, Criterion has set forth sufficient facts to establish prima facie cases, copyrights do not have to be registered to be protected, and the copyright statute does not preempt state law. The court will address each claim and basis for summary judgment in turn.

## III. CONCLUSIONS OF LAW

### A. Summary Judgment Standard

A motion for summary judgment may be granted only if, after examining all of the evidence in the light most favorable to the nonmoving party, the court finds that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. *HDC Medical Inc. v. Minntech Corp.*, 474 F.3d 543, 546 (8th Cir.2007) (citation omitted); *see also Kountze ex rel. Hitchcock Foundation v. Gaines*, 536 F.3d 813, 817 (8th Cir.2008) ("[S]ummary judgment is appropriate where the pleadings, discovery materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law."). Summary judgment is appropriate when the evidence is so one-sided that "there exists only one conclusion." *Webb v. St. Louis Post–Dispatch*, 51 F.3d 147, 148 (8th Cir.1995) (citation omitted).

Once the movant has properly supported its motion, the nonmovant "may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A genuine issue of material fact exists "if the evidence is sufficient to allow a reasonable jury verdict for the nonmoving party." *Great Plains Real Estate Dev., L.L.C. v.*

*Union Central Life Ins. et al.*, 536 F.3d 939, 944 (8th Cir.2008) (citation omitted). A genuine issue of fact will be material if it "might affect the outcome of the suit under the governing law." *Saffels v. Rice*, 40 F.3d 1546, 1550 (8th Cir.1994) (citation omitted). The nonmovant is then "entitled to all reasonable inferences that can be drawn from the evidence without resort to speculation." *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1110 (8th Cir.2001) (citation omitted). Although the non-movant is not required to submit "direct proof that genuine issues of fact exist for trial, the facts and circumstances that she [or he] relies upon must attain the dignity of substantial evidence and not be such as merely to create a suspicion." *Taylor v. White*, 321 F.3d 710, 715 (8th Cir.2003) (internal quotation omitted). A "scintilla" of evidence supporting the movant's position is alone insufficient because "there must be evidence on which the jury could reasonably find for the plaintiff." *Sprenger*, 253 F.3d at 1110. "To survive summary judgment, a plaintiff must substantiate his allegations with enough probative evidence to support a finding in his [or her] favor." *Roeben v. BG Excelsior, Ltd. P'ship*, 545 F.3d 639, 643 (8th Cir.2008) (citing *Haas v. Kelly Services, Inc.*, 409 F.3d 1030, 1034 (8th Cir.2005)).

### B. Vicarious Liability

Lockheed argues that summary judgment is appropriate on Criterion's Unjust Enrichment (Count II), Misappropriation of Trade Secrets (Count III), and Copyright Infringement (Count V) claims, because Brooks was not a Lockheed employee and therefore it is not vicariously liable under the doctrine of respondeat superior. Criterion argues that Brooks was an employee of Lockheed and that whether an employee/employer relationship exists is a question of fact reserved for the jury.

■ According to Iowa law, a corporation is liable for tortious conduct committed during the scope of an employee's employment. *Pippert v. Gundersen Clinic, Ltd.*, 300 F.Supp.2d 870, 877 (N.D.Iowa 2004). It is a "well established rule ... that under the doctrine of respondeat superior, an employer is liable for the negligence of an employee committed while the employee is acting within the scope of his or her employment." *Lyons v. Midwest Glazing, L.L.C.*, 235 F.Supp.2d 1030, 1044 (N.D.Iowa 2002). However, "ordinarily the employer ... of an independent contractor ... is not liable for injuries arising out of the latter's negligence." *Clausen v. R.W. Gilbert Constr. Co.*, 309 N.W.2d 462, 466 (Iowa 1981). Thus, to succeed on a claim of vicarious liability under the doctrine of respondeat superior, there must be "proof of an employer/employee relationship (or employment as an independent contractor), and proof that the injury occurred within the scope of that relationship." *Zimmer v. Travelers Ins. Co.*, 521 F.Supp.2d 910, 936 (S.D.Iowa 2007) (quoting *Walderbach v. Archdiocese of Dubuque, Inc.*, 730 N.W.2d 198, 201 (Iowa 2007) (failure to establish an employer/employee relationship due to multiple statements that priest was an independent contractor, church was a separate legal entity, and priest's salary paid by church, not Archdiocese)).

■ To determine whether a person is an employee or an independent contractor, the court must look at the totality of circumstances surrounding the employment. Relevant factors include: "(1) who had the right to control the physical conduct of the work, (2) whether the purported employee was on the employer's payroll, and (3) who provided the equipment to accomplish the work." *Iowa Mut. Ins. Co. v. McCarthy*, 572 N.W.2d 537, 543 (Iowa 1997). The Iowa Supreme Court also considers: "(1) the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price; (2) independent nature of [her] business or of [her] distinct calling; (3) [her] employment of assistants, with the right to supervise their activities; (4) [her] obligation to furnish necessary tools, supplies, and materials; (5) [her] right to control the progress of the work, except as to final results; (6) the time for which the work[woman] is employed; (7) the method of payment, whether by time or by job; [and] (8) whether the work is part of the regular business of the employer." *Id.* at 543 (quoting *Nelson v. Cities Serv. Oil*, 259 Iowa 1209, 1214–15, 146 N.W.2d 261 (Iowa 1966)). *See also Walderbach v. Archdiocese of Dubuque, Inc.*, 730 N.W.2d 198, 200 (Iowa 2007) (relevant factors include: "the right of selection or employment at will, the responsibility to pay wages, the right to terminate the relationship, the right to control the work, the benefit received by the alleged employer, and the intent of the parties." (citing *Iowa Mut. Ins. Co. v. McCarthy*, 572 N.W.2d 537, 541–42 (Iowa 1997))).

■ Despite the numerous factors the court must weigh, the important distinction "is the degree of retention by [the] principal of the right to control the details of the work as well as the results." *McDonald v. Dodge*, 231 Iowa 325, 1 N.W.2d 280, 282 (1941). Even if there is no "actual control," then it is still the "right to control which is determinative of whether [an] employer-employee relationship exists," as some types of work need little or reduced supervision. *Air Terminal Cab, Inc. v. United States*, 478 F.2d 575, 580 (8th Cir.1973). An employer of an independent contractor may "properly retain control necessary to see the result is obtained according to plan." *Schlotter v. Leudt*, 255 Iowa 640, 123 N.W.2d 434, 437

(1963). However, signing an agreement "stating that [a] worker is [a] self-employed contractor and designating [that] person [as an] independent contractor" does not automatically establish one as an independent contractor. *Louismet v. Bielema*, 457 N.W.2d 10, 13 (Iowa Ct.App. 1990).

 Whether a person is an independent contractor or an employee is a question that is typically reserved for the jury unless the evidence is insufficient and can be decided as a matter of law. *See Pippert v. Gundersen Clinic, Ltd.*, 300 F.Supp.2d 870, 877 (N.D.Iowa 2004) (stating this rule in the context of whether an employer/employee relationship exists). Furthermore, a court may also properly decide a "question of relationship created by written contract...." *Rouse v. State*, 369 N.W.2d 811, 813 (Iowa 1985). Where all evidence points to one side and "there is no rational basis for reasonable minds to differ as to [the] status of [the] servant the issue is one of law for the court to resolve." *Watland v. Walton*, 410 F.2d 1, 3–4 (8th Cir.1969). Applying the factors discussed above to the facts of this case, the court finds that there are no genuine issues of material fact and that Brooks was an independent contractor of Lockheed.

*Control Over Work.* First, regarding the "primary focus"—whether Lockheed had control over Brooks' work—the parties point to countervailing evidence. Criterion notes that in two emails, Brooks asked Lockheed employee, Kathy Plourd, for feedback, comments, and direction. Plourd supervised and directed Brooks' work assignments. (Def. Appx. at 214A.) Brooks also went to Plourd for permission to attend a conference and to be "paid for [her] hours spent in attendance" for that conference, as Brooks stated that this conference was "directly related to [the SSA] work order." (Pl. Appx. at 61.)

Brooks stated in her deposition that Plourd did not "tell [her] how to do the work," or "dictate ... the means or methods [Brooks was] to follow to accomplish the goals set forth in the project." (Def. Appx. at 114A–15.) Additionally, Brooks noted that Lockheed's role was "[a]dministrative, ensuring that the project was fulfilled." (Def. Appx. at 214A.) Once Plourd assigned Brooks a project, any input Brooks needed for project completion came directly from the SSA. (Def. Appx. at 215.) Lockheed did not have creative control over the content of Brooks' work product. In Brooks' deposition, she stated,

A: I received an outline from the SSA that was the Adobe PDF accessibility handbook's outline. And they asked me to write something similar along that outline that was easier to read and understand.

Q: All right, so—and that direction was from SSA?

A: That's correct.

Q: When you had questions about what the project involved or what you were to do, who would you ask?

A: I had bi-weekly meetings—every other week meetings—with Robert somebody that was the SSA guy.... And I didn't necessarily have questions because I knew how to do my job, but their requirements changed based on my work.

Thus, the record is clear that Lockheed had administrative control over Brooks' work product, but that the SSA gave her the feedback and directions she needed to meet its expectations.

*Physical Control of Work Product.* Brooks turned her completed work into Plourd and from that point on, Lockheed was in control of Brooks' physical work product. (Def. Appx. at 220B.)

*Payroll.* GCI, and not Lockheed, paid Brooks because the Lockheed/GCI contract stipulated Lockheed would pay contractors GCI had referred to Lockheed after "submission of properly certified time sheets." (Def. Appx. at 162–64.) The Subcontractor Agreement between Brooks and GCI stated that GCI would not provide Brooks with "... disability insurance, paid vacations, sick leave or other leave, retirement plans, health plans, premium 'overtime' pay, and the like." (Def. Appx. at 153.) Brooks was also responsible for withholding employment taxes as Lockheed (Def. Appx. at 165) and GCI expressly disavowed this responsibility:

> It is understood and agreed that since the Contractor is an independent contractor, [GCI] will make no deductions from fees paid to Contractor for any federal or state taxes or FICA, and [GCI] and [Lockheed] have no obligation to provide Worker's Compensation coverage for Contractor or to make any premium 'overtime' payments at any rate other than the normal rate agreed to in the Purchase Order.

(Def. Appx. at 153.)

The initial Purchase Order from Lockheed to Brooks allocated a maximum of $9600 or 200 hours for Brooks' assignment. (Def. Appx. at 155.) To track these hours, Brooks used the Lockheed timecard system because her compensation from GCI was based on approved and completed billable hours. (Def. Appx. at 207.)

*Type of Contract.* Brooks signed a "subcontractor agreement" with GCI. (Def. Appx. at 151–59.) The agreement states,

> The parties to this Agreement agree that the relationship created by this Agreement is that of broker-independent contractor. Contractor agrees and has advised its personnel that Contractor and its personnel are not employee(s) of Global Commerce & Information, Inc. or the Client and are not entitled to (and also hereby waive) any benefits provided or rights guaranteed by Global Commerce & Information, Inc. or the Client, or by operation of law, to their respective employees....

(Def. Appx. at 153.) Lockheed also notes that Brooks' contract was for a discrete amount of time (Def. Appx. at 155) and for a discrete purpose—to create two handbooks and two "desk guides" for the SSA. There is some disagreement over the number of total projects in which Brooks was involved; Lockheed suggests a total of four, whereas Criterion asserts there were ten projects. Brooks stated in her deposition that she worked on four projects:

> I produced a handbook on how to make PDFs accessible and a handbook on how to make Microsoft Word documents accessible and then export them to PDF and then two desk guides that basically took the most important things in each of those two documents and condensed it into a single page.

(Def. Appx. at 216.) The court finds it irrelevant that multiple versions or drafts could have increased the total number of projects to ten.

*Other Factors.* Criterion argues that Brooks held herself out as a Lockheed employee by using the Lockheed information on her email signature.[7] However, Brooks' email address was associated with the SSA project[8] and she clearly stated in her signature that she was a contractor for Lockheed. (Pl. Appx. at 61.)

---

**7.** The Court notes that Kathy Plourd's email address, a Lockheed employee, was kathleen.plourd@ssa.gov. (Pl. Appx. at 9.)

**8.** Brooks' email address was angy.brooks@ssa.gov. (Pl. Appx. at 61.)

GCI initially referred Brooks to Lockheed and Plourd conducted Brooks' interview for the position. Brooks testified in her deposition that she never used Lockheed computers and only worked at SSA offices. (Def. Appx. at 214.) Lockheed may have printed the final work product in-house, but Brooks did not use Lockheed's physical facilities or its computers in the creation of the work product.

Here, Criterion's claim that Brooks was an employee of Lockheed must fail. Criterion has failed to generate a genuine issue of material fact as to whether Brooks was an employee. The overall nature of Brooks' projects, the minimal oversight and direction from Lockheed, the pay structure, and the location of Brooks' work establish that Brooks was an independent contractor for Lockheed. The court finds summary judgment is appropriate on the issue of whether Lockheed is vicariously liable because Brooks was not a Lockheed employee. For that reason, the court grants summary judgment to Lockheed on the vicarious liability issue as to the Unjust Enrichment (Count II), Misappropriation of Trade Secrets (Count III), and Copyright Infringement (Count V) claims.

### C. Claim Preclusion

Lockheed next asserts that summary judgment is proper on Criterion's Unjust Enrichment (Count II), Misappropriation of Trade Secrets (Count III), and Copyright Infringement (Count V) claims because they are precluded by the Polk County court's previous ruling. Lockheed contends that Criterion's claims would hold Lockheed vicariously liable for Brooks' actions, and argues that under Iowa law, where claims have resulted in a judgment against an individual, the same plaintiff cannot then bring a claim against another individual or company that is vicariously liable. Criterion responds that (1) claim preclusion only applies to the same parties,

(2) the issues were not fully litigated during the first case, (3) its claims against Lockheed involve different facts and are thus independent to the prior suit, and alternatively, (4) there is a change in circumstances present to warrant not applying claim preclusion.

■■ Claim preclusion centers around the principle that a "party may not split or try his claim piecemeal, but must put in issue and try his entire claim or put forth his entire defense in the case on trial." *Iowa Coal Min. Co., Inc. v. Monroe Cty.,* 555 N.W.2d 418, 441 (Iowa 1996) (internal citations omitted). Iowa law states that a party asserting claim preclusion, or res judicata, must establish the following: "(1) the parties in the first and second action were the same; (2) the claim in the second suit could have been fully and fairly adjudicated in the prior case; and (3) there was a final judgment on the merits in the first action." *George v. D.W. Zinser Co.,* 762 N.W.2d 865, 868 (Iowa 2009) (internal citations omitted). *See Spiker v. Spiker,* 708 N.W.2d 347, 353 (Iowa 2006). A party may not return to court "simply by alleging a new ground of recovery for the same wrong." *Westway Trading Corp. v. River Terminal Corp.,* 314 N.W.2d 398, 401 (Iowa 1982). Likewise, an additional claim will likely be barred when the alleged acts, recovery demanded, or the "same evidence will support both actions." *Id.* (internal citations omitted). *Accord Whalen v. Connelly,* 621 N.W.2d 681, 685 (Iowa 2000). Under the rule of claim preclusion, "a valid and final judgment on a claim precludes a second action on that claim or any part of it." *Arnevik v. Univ. of Minn.,* 642 N.W.2d 315, 319 (Iowa 2002).

■■ However, claim preclusion also requires distinguishing between the "same" and "related" causes of action. *Iowa Coal Min. Co., Inc. v. Monroe County,* 555 N.W.2d 418, 441 (Iowa 1996) (citing

*Westway*, 314 N.W.2d at 401). The factors for causes of action that are the "same" for claim preclusion purposes include: "(1) the same principles of substantive and procedural law are applicable to both actions; (2) the same right is alleged to be infringed by the same wrong in both actions; (3) the judgment sought in the second action would infringe rights established in the first; (4) the same evidence would support both actions; or (5) the operative facts are the same in both actions." *Id.* at 443 (internal citation omitted). If a "distinct claim" was not joined, but there was a right to join a related claim, then claim preclusion will not apply to that distinct claim. *Leuchtenmacher v. Farm Bureau Mut. Ins. Co.*, 460 N.W.2d 858, 860 (Iowa 1990).

### 1. Vicarious Liability

In the traditional context, claim preclusive effects of a judgment were limited to parties who would have been bound by a judgment, otherwise known as the "rule of mutuality." 18A CHARLES ALAN WRIGHT ET AL., FED. PRAC. & PROC. JURIS.2D § 4463, at 677. There is increasing authority, however, in favor of extending claim preclusion to derivative liability relationships because the party asserting preclusion should have been joined in the original litigation. *Id.* § 4464.1.[9] Courts have embraced a litmus test for extending claim preclusion to non-original parties depending largely on the degree of privity between the affected parties; where there is insufficient privity between parties, courts have rejected extending claim preclusion.[10] The Supreme Court has held on multiple occasions that parties could invoke claim preclusion if "their liability was . . . 'altogether dependent upon the culpability' of the [prior] defendants.' " *Lawlor v. Nat'l Screen Service Corp.*, 349 U.S. 322, 330, 75 S.Ct. 865, 99 L.Ed. 1122 (1955) (quoting *Bigelow v. Old Dominion Copper Mining & Smelting Co.*, 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009 (1912)). *See also Saudi Arabia v. Nelson*, 507 U.S. 349, 375–76, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993) (related law-

---

**9.**

Nonmutual claim preclusion is most attractive in cases that seem to reflect no more than a last desperate effort by a plaintiff who is pursuing a thin claim against defendants who were omitted from the first action because they were less directly involved than the original defendants.... [Parties should apply] claim preclusion only if the new party can show good reasons why he should have been joined in the first action and the old party cannot show any good reasons to justify a second chance. 18A CHARLES ALAN WRIGHT ET AL., FED. PRAC. & PROC. JURIS.2D § 4464.1, at 724. Many circuits have actively applied and extended claim preclusion in the context of vicarious liability or parties in privity. *See Russell v. SunAmerica Securities, Inc.*, 962 F.2d 1169, 1172–76 (5th Cir.1992) (close relationship between successive corporations established privity to apply claim preclusion); *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 966 (3d Cir.1991) ("We note that a lesser degree of privity is required for a new defendant to benefit from claim preclusion than for a plaintiff to bind a new

defendant in a later action."); *Platsis v. E.F. Hutton & Co.*, 946 F.2d 38, 42–43 (6th Cir. 1991) (claim preclusion when plaintiff first sued employer, lost, then sued employee); *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1502–03 (11th Cir.1990) (plaintiff's settlement precluded claim against person vicariously responsible).

**10.** *Gulf Island–IV, Inc. v. Blue Streak–Gulf Is Ops.*, 24 F.3d 743, 746–47 (5th Cir.1994), *cert. denied*, 513 U.S. 1155, 115 S.Ct. 1112, 130 L.Ed.2d 1076 (1995) (defendant could not assert claim preclusion because he was not a party in the earlier action and lacked privity); *Shaw v. Cal. Dept. of Alcoholic Beverage Control*, 788 F.2d 600, 606 (9th Cir.1986) (California law did not allow parties who were not in privity to assert claim preclusion); *Harrington v. Vandalia–Butler Bd. of Educ.*, 649 F.2d 434, 437 (6th Cir.1981) (defendant parties not in original litigation could assert claim preclusion only if they were in privity with the defendant).

suit against a foreign sovereign "may be entitled to preclusive effect with respect to the [plaintiff's] similar claims"); *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) ("a final judgment on the merits bars further claims by parties or their privies based on the same cause of action").

Additional guidance for applying claim preclusion to vicarious liability claims comes in the form of RESTATEMENT (SECOND) OF JUDGMENTS § 51.[11] Section 51 operates to protect vicariously liable parties from litigation when an injured person has already lost an earlier suit. Despite different parties, there is only one claim, if "[t]he same loss is involved, usually the same measure of damages, and the same or nearly identical issues of fact and law." RESTATEMENT (SECOND) OF JUDGMENTS § 51, cmt. *b.* In *Kimmel v. Iowa Realty Co.,* 339 N.W.2d 374, 377 (Iowa 1983), the Iowa Supreme Court adopted § 51, which states,

> If two persons have a relationship such that one of them is vicariously responsible for the conduct of the other, and an action is brought by the injured person against one of them, the judgment in the action has the following preclusive effects against the injured person in a subsequent action against the other.
>
> (1) A judgment against the injured person that bars him from reasserting his claim against the defendant in the first action extinguishes any claim he has

against the other person responsible for the conduct unless:

> (a) The claim asserted in the second action is based upon grounds that could not have been asserted against the defendant in the first action; or
>
> (b) The judgment in the first action was based on a defense that was personal to the defendant in the first action.

RESTATEMENT (SECOND) OF JUDGMENTS § 51. In *Kimmel,* the Kimmel plaintiffs sued Iowa Realty for vicarious liability based on its former employee's fraud, negligence, and breach of fiduciary duty in a real estate transaction. In the Kimmels' earlier suit, an Iowa Realty employee had sued the Kimmels for an unpaid balance. The Kimmels then filed a counterclaim seeking reformation of the contract based on allegations of mutual mistake and fraud. *Kimmel,* 339 N.W.2d at 378. The lower court issued a final decree ordering reformation. *Id.* Plaintiffs later initiated a new suit against Iowa Realty alleging vicarious liability on the same claims for its employee's tortious conduct. *Id.* The court agreed with the defendant, Iowa Realty, that claim preclusion applied for any claims derived from the plaintiffs' prior counterclaim for reformation against Iowa Realty's former real estate agent. *Id.* at 378–79. However, the court made clear that claim preclusion would not apply if "different rules govern the measure of

---

**11.**

> Many relationships between persons result in one of them being vicariously liable for the conduct of another, the primary obligor. Among these relationships are that of master and servant, wherein the master is liable for certain wrongs committed by the servant in the course of his employment; ... principal contractor and sub-contractor to the extent the former is responsible for the conduct of the latter; co-obligors....

RESTATEMENT (SECOND) OF JUDGMENTS § 51 cmt. *a.* Section 51 prevents inapposite outcomes, such as a vicariously liable party seeking indemnity from the primary obligor, who was already deemed not liable for conduct. Without the § 51 claim preclusion effects, "the primary obligor would have to pay indirectly an obligation from which he had been directly exonerated." *Id.* at cmt. *b.*

damages in the two actions." *Id.* at 379 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 51(2)(b)).[12]

As long as there is sufficient privity between the parties, Iowa courts have applied Section 51 on several occasions. The court has held that negligence and breach of fiduciary duty claims that were advanced against an estate's trustees in prior litigation, were barred under the doctrine of claim preclusion when the subsequent defendants were found to be in privity. *Shivvers v. Hertz Farm Mgmt., Inc.,* 595 N.W.2d 476, 481(Iowa 1999). In *Peppmeier v. Murphy,* 708 N.W.2d 57, 64 (Iowa 2005), the court found that a judgment in favor of the defendant doctor barred suit against the clinic for which he worked where the plaintiff asserted liability based on a theory of vicarious liability. The Eighth Circuit also tests for privity before allowing claim preclusion in a vicarious liability claim. *See Yankton Sioux Tribe v. United States Dep't of Health and Human Serv.,* 533 F.3d 634, 641 (8th Cir.2008) (individual's inclusion in a "Tribe [that] understood itself to be acting in a representative capacity for the benefit of its individual members [was] sufficient to establish constructive notice...."); *Friez v. First Am. Bank & Trust of Minot,* 324 F.3d 580, 583 (8th Cir.2003) ("It is true that the mere relationship of employer and employee sometimes gives rise to a preclusive effect being given to a prior judgment in favor of one or the other."); *Black Clawson Comp., Inc. v. Kroenert Corp.,* 245 F.3d 759, 764 (8th Cir.2001) (with "divergent interests" between the parties asserting claim preclusion, there was "little practical incentive ... [to] provide [other] with virtual representation....").

In the facts before the court, Criterion is asserting vicarious liability against Lockheed based on Brooks' tortious acts related to the claims of Unjust Enrichment (Count II), Misappropriation of Trade Secrets (Count III) and Copyright Infringement (Count V). Lockheed defends based on claim preclusion. The court has already found as a matter of law that Brooks was an independent contractor working for Lockheed. *See* Section III.B. Because Brooks was not a Lockheed employee, Lockheed cannot be vicariously liable for any tortious acts Brooks committed against Criterion. However, Section 51 applies not only in vicarious liability situations, but also when there is sufficient privity between the parties to merit extending claim preclusion to a non-original suit party. This is especially true in instances where the losses and damages are similar, and "the same or nearly identical issues of fact and law" are present. RESTATEMENT (SECOND) OF JUDGMENTS § 51, cmt. *b.* Here, the facts demonstrate that there is sufficient similarity between the claims Criterion is alleging against Lockheed and Brooks, similar damages, and only superficial differences between issues of fact and law. Additionally, Lockheed and Brooks are in privity because Criterion's claims against Lockheed are based on tortious acts Brooks committed while working as an independent contractor for Lockheed. All of the facts indicate that Criterion is suing Lockheed as the functional equivalent of Brooks and Criterion "cannot show any good reasons to justify a second chance." 18A CHARLES ALAN WRIGHT ET AL., FED. PRAC. & PROC. JURIS.2D § 4464.1, at 724. Thus, this court grants Lockheed's motion and applies claim preclusion to Counts II, III, and V.

---

12. For example, *P* may be precluded from seeking punitive damages from *A,* but not from *B.* In this case, *P* Section 51(2)(b) would apply and *P* could seek punitive damages only as against *B.* RESTATEMENT (SECOND) OF JUDGMENTS § 51(2)(b) cmt. *d.*

#### 2. Criterion Arguments Against Summary Judgment

Although the court finds that there are not genuine issues of material fact based upon privity between Lockheed and Brooks, it is expedient to also address Criterion's counter-arguments against summary judgment on the issue of claim preclusion. For, as discussed above, the court finds that there is sufficient privity between Lockheed and Brooks to merit applying claim preclusion to Counts II, III, and V. Thus, Criterion responds with three arguments as to why claim preclusion would be improper for the remaining elements of claim preclusion.

##### a. Prior Suit not Fully and Fairly Litigated

Criterion argues that the issue of Lockheed's liability was not fully litigated during the Polk County case because Criterion was not fully aware of the relationship between Brooks and Lockheed. Claim preclusion operates to prevent additional litigation where "the party against whom preclusion is asserted had a full and fair opportunity to litigate the claim or issue in the first action." *Arnevik*, 642 N.W.2d at 319 (internal citations omitted). In some cases, "ignorance may temper a strict application of issue or claim preclusion in subsequent litigation." *Kimmel*, 339 N.W.2d at 379 (citing *City of Chariton v. J.C. Blunk Const. Co.*, 253 Iowa 805, 112 N.W.2d 829, 834 (1962) (city's reliance on insufficient engineer certification did not support defendant's contention that city lacked due diligence and should be barred from counterclaim suit; court made an exception to claim preclusion)).

The court thus examines the facts to determine whether Criterion had the opportunity to fully and fairly litigate its claim against Lockheed in the prior suit. Criterion admits that prior to its suit against Brooks, it "knew that Brooks had posted information on SSA's website" but that it did not connect the SSA work to Brooks' "involvement with Lockheed." (Pl.'s Br., dkt. 95–2 at 42.) Criterion claims that it had "no idea about the true nature" of Brooks' involvement with the SSA and Lockheed until her trial testimony. (Pl.'s Br., dkt. 95–2 at 42.) Criterion offers its requests for damages in the original suit to underscore its patent unawareness of Lockheed and Brooks' true relationship. (Pl.'s Br., dkt. 95–2 at 42–44.) Lockheed counters Criterion's asserted ignorance of the Brooks–Lockheed relationship by referring to trial briefs, testimony, and the court's findings.[13] (Def.'s Reply Br., dkt. 112 at 18–20.) Lockheed gleans awareness from Criterion's own statements, such as Brooks' response during discovery that she currently worked for Lockheed (Pl.'s St. of Undisputed Facts, dkt. 95–3 at 4) and the trial transcript in which Brooks discussed her accessibility work with Lockheed and SSA (Pl.'s St. of Undisputed Facts, dkt. 95–3 at 9). Lockheed also cobbles together Criterion's awareness of Brooks' relationship with Lockheed by asserting that Criterion should have connected the abrupt contract terminations with SSA and Lockheed to Brooks: "It's the only two instances where negotiations stopped with real no [sic] explanation. That just doesn't happen." (Def. Appx. at 0044.) Lockheed thus asserts that Criterion had enough indicators

---

**13.** In his findings, Judge Artis Reis also noted that, "Plaintiff would have opportunity to help Lockheed Martin, and others, pirate Criterion 508 Solutions' ideas, products, customers, and good will." (Def. Appx. at 8.) Also, "[t]he documents posted on SSA's website explained Criterion 508 Solutions' specialized, technical, and unique process for making documents ... [Brooks] breached the contract when she chose to post this confidential and proprietary information on the internet." (Def. Appx. at 5–6.)

from Brooks that Criterion should have investigated the relationship more fully, either through depositions or other discovery requests. Criterion undisputedly knew that Brooks was working for the SSA; the onus was on Criterion to use litigation tools to discover the extent of Brooks' other projects and employment. The court, while recognizing that ignorance or unawareness *may* temper some applications of claim preclusion, agrees with Lockheed in the present instance that Criterion did have the opportunity to fully and fairly litigate in the prior suit.

### b. Claims in Present Suit are Independent to Lockheed

Alternatively Criterion asserts that the claims in the present suit are not precluded because the claims are independent to Lockheed. Criterion maintains that the claims against Brooks in the first lawsuit were based on her own wrongful conduct in breaching the restrictive covenants in her Subcontractor's Services Agreement with Criterion, and the damages sought against her were based on her own misconduct. By contrast, the claims against Lockheed are based on its decision to hire Brooks, while still bound by her Criterion restrictive covenant, for the purpose of obtaining Criterion trade secrets and proprietary information. Additionally, Criterion alleges that the claims and damages in the present case derive from Lockheed's sale of Criterion's secrets to SSA, with the subsequent publishing of this sensitive information on the web. Criterion maintains that although there are many similar and common facts between the two cases, the claims against Lockheed are independent to those against Brooks. (Pl.'s Br. in Resistance, dkt. 95–2 at 44.) Lockheed objects to this characterizing of the independent claims, "as each of those claims is based solely on the bad acts of Brooks,

with [Lockheed]'s liability alleged to be 'vicarious.'" (Def.'s Br., dkt. 81 at 32.)

As discussed previously, claim preclusion only operates in the context of the "same" cause of action. *Iowa Coal,* 555 N.W.2d at 441 (Iowa 1996). Iowa courts use a balancing multi-factor test for determining whether claims are the same for claim preclusion purposes, including whether: (1) the substantive and procedural law is the same; (2) the same right is alleged to be infringed; (3) a judgment in the second action would infringe rights from the first; (4) the same evidence is used in both; or (5) the facts are the same in both actions. *Id.* at 443.

In applying this independent claim test to the present case, the facts indicate that Criterion is not asserting independent claims. The substantive law in both the former and current suit is based on Brooks' breach of her restrictive covenant, thus leading to unjust enrichment, misappropriation of trade secrets, and copyright infringement. It follows that the outcome of Brooks breaching her restrictive covenant led to the same alleged infringed right; namely, Criterion's ability to sell and profit on its product without proprietary information leaks. The parties dispute to the extent Brooks shared Criterion's proprietary information with SSA and Lockheed, although the parties agree that if Brooks did share proprietary information, that she was in breach of her restrictive covenant. Although there may be a reasonable inference that Lockheed's motive in hiring Brooks was to gain Criterion proprietary information indirectly—without paying Criterion the licensing fees— Criterion has failed to bolster this allegation with any evidence that Lockheed's motive was improper. Criterion also fails to demonstrate that a judgment in its favor against Lockheed would not infringe Brooks' rights in the former suit. For

example, the court has already found that Lockheed and Brooks have party privity. If Lockheed were to be held liable in the present suit, it could seek indemnification from Brooks as the active tortfeasor—who was already adeemed not liable.

Lastly, much of the same evidence and facts are used in the present suit as in the former suit. Criterion had been aware that Brooks had subverted confidential information and made some information publicly available. Through discovery in the present case, Criterion has uncovered Brooks' assigned project work, additional evidence relating to her employment contract and communication with Lockheed and GCI, as well as control over work product. However, the additional facts Criterion has presented do not establish the existence of an "independent claim." Although the facts do perhaps signal intent on behalf of Lockheed to use Brooks as a cheap source for proprietary Section 508 information, Criterion has not supported this allegation with sufficient evidence. Additionally, Criterion has not managed to factually demonstrate with any certainty, as to how the new alleged damages based on Lockheed's conduct differ materially from the original damages sought.[14]

Criterion asserts that Lockheed vicariously benefitted from its use of Brooks and this interference resulted in Criterion's lost contracts with Lockheed and the SSA. Criterion calculates these damages range up to $ 100,000,000 based on the four courses and Lockheed's cost per course for its 60,000 employees. (Def. Appx. at 00223–26.) These are the same damages Criterion asserted against Brooks, with the exception of converting the claim for

Brooks' breach of fiduciary duty to a civil conspiracy to breach fiduciary duty (Count VII). Considering that the suit against Brooks called for damages resulting from lost contracts with Lockheed and the SSA, Criterion does not allege any separate bases for damages against Lockheed.

Criterion has thus presented no evidence to suggest that Lockheed intentionally accepted proprietary information and trade secrets with its decision to hire Brooks or its use of Brooks on the SSA project. Additionally, the damages, evidence, and facts do not differ materially between the cases. The court therefore agrees with Lockheed that Criterion's claims are not independent from the claims asserted in the prior suit.

c. Change of Circumstances

Last, Criterion argues that there has been a change of circumstances in the case, requiring that this case should be treated differently than the earlier litigation between Brooks and Criterion. Criterion cites *Kimmel* and section 24 of the RESTATEMENT (SECOND) OF JUDGMENTS, comment *f*, for the proposition that "changed circumstances afford a basis for concluding that the second action constitutes a different claim from the first." *Kimmel*, 339 N.W.2d at 379. The changed circumstances in this case, according to Criterion, include: new information about the relationship among Brooks, Lockheed, and the SSA; Brooks' creation of 10 documents for Lockheed; and the SSA publishing the Section 508 information "to all section 508 coordinators across the country." (Pl.'s Br. in Resistance, dkt. 95–2 at 45.) Lock-

---

**14.** For example, in Criterion's prior suit against Brooks, the court held that, "There was unrebutted testimony the average contract engaged by Criterion was $25,000. However, any loss of contracts due to these violations is speculation and not supported by the evidence." (Def. Appx. at 0022.) Additionally, "[w]ithout proving actual damages, the defendant cannot enforce the liquidated damages clause of the covenant not to compete." (Def. Appx. at 0033.)

heed opposes the characterization of this information as "changed circumstances," because "it is undisputed that Criterion discovered, or at a minimum, should have discovered, during state court litigation all of the circumstances that form of [sic] the basis of its claims in the current suit." (Def.'s Reply Br., dkt. 112 at 18.)

As discussed previously, Criterion admits that it was aware that Brooks did work for the SSA and that Brooks may have been the influencing factor behind the abrupt termination of the contract talks with SSA and Lockheed. Criterion knew that Brooks breached her restrictive covenant; there was a corresponding duty to investigate the extent of her contractual violations. For example, Criterion could have subpoenaed Lockheed and SSA in the prior suit if Criterion found Brooks' answers lacked detail. Criterion's counterclaim to Brooks' petition was in July 2006 (Def. Appx. at 0012), the state suit final order was issued in July 2007 (Def. Appx. at 0038), and Criterion did not initiate its suit against Lockheed until September 2007 (Def. Appx. at 0091). Criterion's abrupt suit against Lockheed following its small damage recovery in the Brooks suit does not suggest changed circumstances, but does indicate Criterion sought additional recovery based on vicarious liability. The court finds that there is not a substantial change in circumstances present between the two cases to overcome claim preclusion.

### 3. Claim Preclusion Conclusion

Lockheed contends that Criterion's claims would hold Lockheed vicariously liable for Brooks' actions, and argues that under Iowa law, where claims have resulted in a judgment against an individual, the same plaintiff cannot then bring a claim against another individual or company that is in privity or vicariously liable. Criterion responds that (1) claim preclusion only ap-

plies to the same parties, (2) the issues were not fully litigated during the first case, (3) its claims against Lockheed involve different facts and are thus independent to the prior suit, and alternatively, (4) there is a change in circumstances present to warrant not applying claim preclusion. The court rejects Criterion's counter-arguments to the extent that the issues were not fully litigated during the first case, the claims against Lockheed are independent to that of Brooks, and that a change in circumstances could overcome claim preclusion. Criterion has not presented sufficient evidence to support these counter-arguments.

Furthermore, the court finds that there are no genuine issues of material fact as to whether Brooks' employment (or privity) with Lockheed would result in vicarious liability for Lockheed. Lockheed can assert party privity and claim preclusion as a shield against Criterion's claims. The court therefore grants summary judgment to Lockheed on Counts II, III, and V based solely upon Lockheed's assertion that the claims are precluded by the prior Polk County suit.

### D. Failure to Establish a Prima Facie Case on Counts I, II, and VIII

Lockheed asserts that the court should grant summary judgment on Criterion's Intentional Interference with a Contract (Count I), Unjust Enrichment (Count II), and Civil Conspiracy to Breach Fiduciary Duties (Count VIII) claims because Criterion has failed to establish prima facie claims. The non-movant may not rest upon mere allegations in its pleading, but must set forth specific facts "showing the existence of a genuine issue for trial." *Cemen Tech, Inc. v. Three D Indus., L.L.C.,* 753 N.W.2d 1, 5 (Iowa 2008).

### 1. Intentional Interference with a Contract

Criterion asserts that Lockheed intentionally interfered with the restrictive covenant agreement between Criterion and Brooks by accepting proprietary information belonging to Criterion. Lockheed disagrees because it was unaware of any contractual provisions that would prevent Brooks from performing the work in question.

 Under Iowa law, the elements to establish intentional interference with a contract are: (1) the existence of a valid contractual relationship, (2) knowledge of the relationship on the part of the interfering party, (3) intentional and improper interference that induced or caused a breach or termination of the contract, and (4) damages. *Revere Transducers, Inc. v. Deere & Co.*, 595 N.W.2d 751, 763 (Iowa 1999) (internal citations omitted); *Kern v. Palmer College of Chiropractic*, 757 N.W.2d 651, 657–68 (Iowa 2008). A valid claim for tortious interference with a contract only arises with a valid contract. *Bump v. Stewart, Wimer, & Bump, P.C.*, 336 N.W.2d 731, 737 (Iowa 1983). However, a claim may also be based on a "prospective business relationship that has not yet been reduced to contract." *Economy Roofing & Insulating Co. v. Zumaris*, 538 N.W.2d 641, 651 (Iowa 1995). Iowa Model Civil Jury Instruction 1200.7 defines a prospective business relationship as a "reasonably likely contract of financial benefit to the plaintiff" or "a reasonably likely business relationship of financial benefit to the plaintiff." *Id.* (written agreement existed between Economy and Alcoa, such that combination of agreement with other improper actions of interferer resulted in a "scheme to financially harm or destroy Economy's business."). *See also* Restatement (Second) of Torts § 766B cmt. *c*. The second prong establishes that the interfering party's knowledge does not need to be actual, as "it is sufficient that the defendant had knowledge of facts which, if followed by reasonable inquiry, would have led to the disclosure of the contractual relationship between plaintiff and third parties." *Revere Transducers, Inc.*, 595 N.W.2d at 764. *See* Iowa Civil Jury Instruction 1200.4 (2004); *ACT. Inc. v. Sylvan Learning Systems, Inc.*, 296 F.3d 657 (8th Cir.2002).

 The third prong requires conduct that was unfair and unreasonable under the circumstances. *Nesler v. Fisher & Comp., Inc.*, 452 N.W.2d 191, 197 (Iowa 1990). Courts consider a multitude of factors, including: the nature of the conduct, defendant's motive, interests of the party with which the conduct interferes, defendant's interests sought to be advanced, social interests to protect freedom of action and contractual interests of the parties, degree of nearness of defendant's conduct to the interference, and the relations between the parties. *Id.* *See also Rail Intermodal Specialists, Inc. v. Gen. Elec. Capital Corp.*, 103 F.3d 627 (8th Cir. 1996); *Sawheny v. Pioneer Hi-Bred Int'l, Inc.*, 93 F.3d 1401 (8th Cir.1996). Interfering actions are not wrongful if they are undertaken to advance the defendant's own business interests, *Fin. Marketing Serv., Inc. v. Hawkeye Bank & Trust of Des Moines*, 588 N.W.2d 450 (Iowa 1999), or when conduct is merely a consequence resulting from "actions taken for a purpose other than to interfere with a contract." *Green v. Racing Ass'n of C. Iowa*, 713 N.W.2d 234, 244 (Iowa 2006) (citing *Berger v. Cas' Feed Store, Inc.*, 543 N.W.2d 597, 599 (Iowa 1996)). Interference is intentional if done "on purpose or [the defendant] knows the conduct is substantially certain to interfere." Iowa Model Civil Jury Instructions 1200.6 (2004); *see also* Restatement (Second) of Torts

§ 766 cmt. *j*. The plaintiff has a higher burden to prove interference with a prospective business advantage, as the plaintiff must prove "that defendant acted with the purpose of injuring or destroying plaintiff's business; if a business acts for more than one purpose, the improper purpose must predominate to establish liability." *EFCO Corp. v. Symons Corp.*, 219 F.3d 734, 744 (8th Cir.2000); *see also* Iowa Model Civil Jury Instructions 1200.8 (2004). There is no tortious interference if the alleged tortfeasor's conduct does not cause the contract to be breached. *Reihmann v. Foerstner*, 375 N.W.2d 677 (Iowa 1985). Lastly, courts will not grant relief unless damages result from the tortious interference. *Bump*, 336 N.W.2d at 737.

Criterion alleges that sufficient facts exist to satisfy the elements for intentional interference with a contract. Criterion points to the Subcontractor's Services Agreement it had with Brooks, which restricted Brooks' ability to work in the Section 508 industry and provided Criterion "rights of title" to all Section 508–related material Brooks produced. (Def. Appx. at 147–50.) Criterion gave Brooks sixty days' notice of termination on May 17, 2005, and alleges that Brooks was aware of the SSA/Lockheed/Criterion negotiations for contracts to produce Section 508 material. (Pl.'s Br. in Resistance, dkt. 95–2 at 56.) Before the termination of the Agreement with Criterion, Brooks entered into a Subcontractor Agreement with GCI on May 23, 2005 (Def. Appx. at 151–59), whereupon she was then retained by Lockheed to perform Section 508 work for the SSA. Criterion relies upon one email from Brooks to Plourd that evidences Brooks' disclosure to Lockheed of her past employment:

> If you recall, I worked for Criterion 508 Solutions prior to coming to work as a contractor for Lockheed Martin. I told you at that time that this was not a violation of the contract I had with Criterion, since Lockheed wasn't a client of Criterion's, nor was the SSA. This was, and still is, true.

(Pl. Appx. at 1.)

Lockheed refutes any intentional interference with Brooks' restrictive covenant with Criterion, and states that "the only thing that that emails [sic] evidences is Criterion's assertion that LMS knew, at one time, that Brooks had *a contract* with Criterion." (Def.'s Reply Br., dkt. 112 at 26) (emphasis in original). In addition, Lockheed asserts that Brooks' misconduct occurred prior to joining Lockheed, it had "no knowledge of any restrictive covenant agreement," GCI had a duty to conduct a background check on Brooks, Brooks had her employment contract with GCI, and that Brooks learned some information about PDF technology through public web sites. (Def. Appx. at 0139.) In sum, Lockheed states that it is "*undisputed* that LMS had no knowledge of any restrictive covenant agreement or other agreement between Criterion and Brooks *that prevented Brooks from working with LMS or the SSA*." (Def.'s Reply Br., dkt. 112 at 26.)

█ The court finds that while Lockheed may have had notice from Brooks that Criterion was a former employer, the facts do not support Criterion's contention that Lockheed had knowledge of the contract or intended to interfere with the terms of the restrictive covenant. A party has a duty to make reasonable inquiry, such that an interfering party may have constructive notice of a contract. But in this case, Brooks contracted directly with GCI, GCI referred Brooks to Lockheed, and Criterion has not presented any evidence to demonstrate that Lockheed would have learned of the contractual limitation through a reasonable inquiry or that Lockheed had actual knowledge of the Brooks'

restrictive covenant. Lockheed hired Brooks through GCI; GCI had the duty to investigate Brooks' employment history and any potential conflict of interest limitations. Criterion also fails to establish a prima facie case because there are insufficient facts to support its contention that Lockheed intentionally intended to interfere with Brooks' restrictive covenant. Since there is no proof in the record that Lockheed hired Brooks for an "improper purpose" or intended to induce or cause Brooks to breach her restrictive covenant, the court finds that Criterion fails to establish a prima facie case for Intentional Interference with a Contract. Accordingly, summary judgment is granted for Lockheed on Intentional Interference with a Contract (Count I).

### 2. Unjust Enrichment

Criterion alleges that Lockheed, through Brooks' employment, was unjustly enriched by accepting proprietary information and trade secrets belonging to Criterion. Lockheed disputes Criterion's claim for unjust enrichment and asserts that there is insufficient evidence to establish a prima facie claim.

■■■■■ The doctrine of unjust enrichment flows from the principle that, at the expense of another, a party should not be unjustly enriched, receive property, or receive benefits without paying just compensation. *Credit Bureau Enters., Inc. v. Pelo*, 608 N.W.2d 20, 25 (Iowa 2000). "A third-party claim based on unjust enrichment only requires that a legally cognizable claim exists, not the actual assertion of that claim." *State, Dept. of Human Serv. ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 152 (Iowa

2001). Unjust enrichment provides restitution for the injured party, based upon the following recovery elements: "(1) defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances." *Id.* at 154–55; *see also Iowa Waste Systems, Inc. v. Buchanan County*, 617 N.W.2d 23, 29 (Iowa Ct.App.2000). Unjust enrichment is a broad doctrine and includes the conferral of indirect benefits, including "benefits conferred by third parties." *Id.* at 155. The critical inquiry is that the benefit received be at the expense of the plaintiff. *Id.* (citing *Guldberg v. Greenfield*, 259 Iowa 873, 146 N.W.2d 298, 301 (1966)); *see also Slade v. M.L.E. Inv. Co.*, 566 N.W.2d 503, 506 (Iowa 1997) ("A plaintiff seeking recovery under this doctrine must prove the defendant received a benefit that in equity belongs to the plaintiff").

■■■ Lockheed avers that it never "appreciated, accepted, and retained the benefit under inequitable circumstances," that GCI technically hired Brooks, and the work product Brooks made was for the SSA, not Lockheed. (Def.'s Br., dkt. 81 at 54.) Criterion argues that Lockheed's "factual and legal analysis [regarding unjust enrichment] . . . was unanswered and unanswerable." [15] (Pl.'s Sur Reply, dkt. 121 at 30.) Additionally, Criterion rejects Lockheed's assertion that Brooks did not confer a benefit on Lockheed because the projects were for the SSA. (Pl.'s Br. in Resistance, dkt. 95–2 at 59–60.) Neither side disputes that Brooks' work for the SSA resulted in more than $300,000 in revenue; but Criterion insists that "[t]he

---

**15.** Criterion is correct in its assertion (Pl.'s Sur Reply, dkt. 121 at 30) that Lockheed did not address Count II in its Reply Brief. (Def.'s Reply Br., dkt. 112.) However, Lockheed did dispute the adequacy of Criterion's unjust enrichment claim in its Summary Judgment Brief. (Def.'s Br., dkt. 81 at 53.)

work product contained Criterion's trade secrets and proprietary information such that Lockheed's sale of the information for a profit came at Criterion's expense." (Pl.'s Br. in Resistance, dkt. 95–2 at 60.)

On balance, the court rejects Lockheed's argument that if Brooks made work product for the SSA's benefit, then Lockheed was not unjustly enriched. This argument ignores the more than $300,000 the SSA paid Lockheed for Brooks' work product. If this argument were to prevail, then the simple tactic of hiring independent contractors could bar plaintiffs from justifiably seeking restitution for unjust enrichment. Additionally, case law is clear that the broad doctrine of unjust enrichment captures indirect benefits from third parties. Furthermore, the prior state suit established that the majority of Brooks' knowledge of Section 508 and PDF conversion did come from Criterion's proprietary information. There are sufficient genuine issues of material fact present regarding the extent of unjust enrichment, such that it is a matter better suited for a jury. Accordingly, the court denies summary judgment to Lockheed on Unjust Enrichment (Count II).

### 3. Civil Conspiracy to Breach Fiduciary Duties

Criterion advances that Lockheed knew Brooks owed fiduciary duties to Criterion and acted in concert with Brooks in her breaching of duties, the purpose of which was to establish Lockheed's ability to compete directly with Criterion. Lockheed denies that there was ever any agreement or conspiracy between Brooks and itself to encourage Brooks to breach her fiduciary duties to Criterion.

To establish a civil conspiracy under Iowa law, two or more persons must act together "to accomplish an unlawful purpose, or to accomplish by unlawful means some purpose not in itself unlaw-

ful." *Wright v. Brooke Group, Ltd.,* 652 N.W.2d 159, 171 (Iowa 2002) (quoting *Basic Chems., Inc. v. Benson,* 251 N.W.2d 220, 232 (Iowa 1977)); *accord Brown v. Kerkhoff,* 504 F.Supp.2d 464, 525 (S.D.Iowa 2007). An agreement "must exist between the two persons to commit a wrong against another." *Ezzone v. Riccardi,* 525 N.W.2d 388, 398 (Iowa 1994). Agreement is defined by the Iowa Model Civil Jury Instructions as:

> ... The agreement can be oral or written, informal or formal, and need not be detailed. The agreement need not be expressed in words and may be implied and understood to exist from the conduct itself. It may be proved by direct or circumstantial evidence. Merely because two or more persons associate with each other, or meet to discuss common interests or goals does not, by itself, establish a conspiracy.

Iowa Model Civil Jury Instructions 3500.2 (2004). Correspondingly, a conspiracy only arises when there is voluntary and knowing participation in a "common scheme." *Wright,* 652 N.W.2d at 174. By contrast, mere "[s]peculation, relationship, or association and companionship do not establish a conspiracy." *Ezzone,* 525 N.W.2d at 398. For example, the Eighth Circuit held in *PFS Distrib. Co. v. Raduechel,* that defendants "did not possess the requisite knowledge to enter into a conspiracy." 574 F.3d 580, 593 (8th Cir.2009). In *PFS,* PFS Distrib. Co. alleged that a bank and bank's vice president participated in a civil conspiracy scheme with Defendants Raduechel and Spain to breach fiduciary duties and misappropriate trade secrets. *Id.* In *PFS,* a bank extended loans to employees of PFS to fund the operation of a new competing business, with the employees subsequently breaching their fiduciary duties to PFS and misappropriating trade secrets. *Id.* Based on

expert testimony stating that the "loan application would not trigger concern over the confidentiality of the information," the court held that the bank's vice president was not aware of any employment contracts, did not knowingly conspire with Raduechel and Spain, and the court thus denied a conspiracy claim against the bank and its vice president. *Id.*

The conspiracy itself does not give rise to the claim; rather, it is the underlying wrongful acts. *Basic Chems.*, 251 N.W.2d at 233. Civil conspiracy is merely a method to impose vicarious liability on a party for the wrongful conduct of another with whom the party has acted in concert. *Wright,* 652 N.W.2d at 172. Iowa law extends the wrongful conduct beyond intentional torts and requires that the conduct taken by a co-conspirator must only be actionable in the absence of a conspiracy. *Id.* at 174 (in a negligence suit, "plaintiff may base a claim of civil conspiracy on wrongful conduct that does not constitute an intentional tort."). If the plaintiff does not present sufficient evidence generating genuine issues of material fact for the underlying wrongful conduct, then the civil conspiracy claim also fails. *Doe v. Baxter Healthcare Corp.*, 380 F.3d 399, 410 (8th Cir.2004); *accord Jensen v. Barlas,* 438 F.Supp.2d 988, 1004–05 (N.D.Iowa 2006).

In terms of the underlying claim, Criterion claims that Brooks breached her fiduciary duties when she shared proprietary information with Lockheed. According to Iowa law, a fiduciary duty is when, "[a] fiduciary relationship exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relationship." *Kurth v. Van Horn,* 380 N.W.2d 693, 695 (Iowa 1986) (citing Restatement (Second) of Torts § 874 cmt. *a* (1979)). According to *Kurth,*

A fiduciary relationship imparts a position of *peculiar confidence placed by one individual in another.* A fiduciary is a person with a duty *to act primarily for the benefit of another.* A fiduciary is in a position to have and exercise, and does *have and exercise influence over another.* A fiduciary relationship implies a condition of *superiority of one of the parties over the other.* Generally, in a fiduciary relationship, the property, interest or authority of the other is *placed in the charge of the fiduciary.*

380 N.W.2d at 698 (internal citations omitted) (emphasis in original). A fiduciary relationship may also arise "whenever confidence is reposed on one side, and domination and influence result on the other ... Such [a] relationship exists when there is a reposing of faith, confidence and trust, and the placing of reliance by one upon the judgment and advice of the other." *Economy Roofing & Insulating Co. v. Zumaris,* 538 N.W.2d 641, 647–48 (Iowa 1995). Additionally, there may be some instances where a lack of inequality suggests "no compelling evidence" of a fiduciary relationship. *Employers Mut. Casualty Co. v. Collins & Aikman Floorcoverings, Inc.,* 422 F.3d 776, 782 (8th Cir.2005) ("two large, sophisticated business entities" indicated a lack of influence or domination between them). Additionally, even if there is a fiduciary relationship, to prevail on a breach of fiduciary duty claim, the plaintiff must prove duty, breach, causation, and damages. *Lyons v. Midwest Glazing,* 265 F.Supp.2d 1061, 1076 (N.D.Iowa 2003) (citing Restatement (Second) of Torts § 874).

Lockheed asserts that the Civil Conspiracy to Breach Fiduciary Duties claim must fail because there was never an agreement or intent to enter into a conspiracy. "There is absolutely no evidence of any agreement between LMS and Brooks to breach Brooks' fiduciary duties."

(Def.'s Br., dkt. 81 at 55.) Furthermore, Brooks testified in her deposition that Lockheed never asked her to "commit a wrongful act," "to breach a noncompete agreement," "to use trade secret information," "to use any copyrighted information," or "to improperly claim rights of authorship in materials so that [she] could defraud the SSA." (Def.'s Br., dkt. 81 at 55–56.) Criterion disputes Lockheed's claim that it lacked knowledge of the restrictive covenant because of the email between Brooks and Plourd, and that "[r]easonable inquiry into the contents of the contract would have revealed the restrictive covenant." (Pl.'s Sur Reply, dkt. 121 at 31.) According to Criterion, other circumstantial evidence suggesting an "agreement" or conspiracy between Brooks and Lockheed includes: Brooks' prior experience with Criterion, Lockheed's sale of Criterion's Section 508 proprietary information to the SSA, and the SSA's subsequent publishing of Brooks' work. (Pl.'s Sur Reply, dkt. 121 at 32.) Criterion thus asserts that the underlying claim of breach of fiduciary duty is met because Brooks violated her fiduciary duty when she "produced at least 10 Section 5081[sic] accessibility projects for Lockheed." (Pl.'s St. of Undisputed Mat. Facts, dkt. 95–3 at 12.) Furthermore, Criterion alleges Lockheed conspired with Brooks to breach her fiduciary duties when it hired Brooks, "for the purpose of obtaining Criterion's trade secrets and proprietary information without having to pay Criterion for it." (Pl.'s St. of Undisputed Mat. Facts, dkt. 95–3 at 13.)

Viewed in the light most favorable to Criterion, the court finds that there is insufficient factual support to establish a civil conspiracy to breach fiduciary duties. It is undisputed that Brooks violated her restrictive covenant with her Lockheed and SSA work, but there is insufficient evidence to support Criterion's contention that Lockheed conspired with Brooks to gain Criterion's proprietary information. The court finds that there is insufficient evidence of an agreement, voluntary participation, or intent to enter into a civil conspiracy. Lockheed hired Brooks through GCI, and Criterion itself points out that GCI contracted to conduct a "Standard Background Investigation" and "represents and warrants that the information in all credentials relating to Contract Labor Employees that are furnished to Lockheed Martin ... have been verified as complete and accurate...." (Pl.'s St. of Undisputed Mat. Facts, dkt. 95–3 at 12.) Thus, Lockheed would have lacked the requisite knowledge or intent to enter into a conspiracy if GCI "vetted" all the candidates before referring them onto Lockheed. Criterion cannot rely on "[s]peculation, relationship, or association and companionship [to] establish a conspiracy." *Ezzone*, 525 N.W.2d at 398. Accordingly, the court grants summary judgment to Lockheed on the Civil Conspiracy to Breach Fiduciary Duties (Count VIII) claim.

### E. Copyright Infringement Claim

Lockheed also argues that Criterion's Copyright Infringement (Count V) claim cannot be maintained because the copyrights have not been registered and the Intentional Interference with a Contract (Count I) and Unjust Enrichment (Count II) claims cannot succeed because federal copyright law preempts any state contract claims related to copyrights. Criterion concedes that although it has not met the requirements for copyright registration, non-statutory damages are available as a remedy. Criterion also claims that the Copyright Act only preempts state law rights that abridge or infringe an exclusive right provided by the federal act.

### 1. Copyright Registration

Lockheed avers that Criterion "cannot maintain a civil action for money damages for copyright infringement when it has not registered for copyright protection." (Def.'s Br., dkt. 81 at 44.) The Copyright Act provides that no civil action for copyright infringement can be maintained until registration of the copyright claim has been made:

> (a) Except for an action brought for a violation of the rights of the author under section 106A(a), and subject to the provisions of subsection (b), *no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title.*

17 U.S.C. § 411 (emphasis added). Congress alone has the task and burden of defining the "scope of the limited monopoly that should be granted to authors...." *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 429, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984). "The case law is clear that copyright registration is a jurisdictional prerequisite to an infringement action under section 411." *TMT Mfg., Inc. v. Illowa Resource Develop., Inc.*, 2008 WL 4911850 (S.D.Iowa 2008). *See Action Tapes, Inc. v. Mattson*, 462 F.3d 1010, 1013–14 (8th Cir.1006) ("[T]he copyright owner may not sue for infringement under the federal Copyright Act until the owner has delivered the deposit, application, and fee required for registration to the United States Copyright Office ...") (internal citations omitted); *Sun Media Systems, Inc. v. KDSM, L.L.C.*, 564 F.Supp.2d 946, 975 (S.D.Iowa 2008) (registration of a copyright is a jurisdictional prerequisite to an infringement action).

■ While registration is a prerequisite for bringing a copyright infringement suit, in some instances, "registration of a copyright is permissive" and whether or not a party can sue for infringement of unregistered materials depends on the type of damages sought. *Walker Mfg., Inc. v. Hoffmann, Inc.*, 220 F.Supp.2d 1024, 1039 (N.D.Iowa 2002) (citing *Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345 (8th Cir.1994)). In all instances, if a party is seeking statutory damages, then registration is required. *Id.* However, a party seeking injunctive relief or actual damages is not required to register a copyright before filing suit for copyright infringement. 220 F.Supp.2d at 1039–41 (citing *Olan Mills*, 23 F.3d at 1349). Injunctive relief and actual damages remain available to the infringed party, even without copyright registration. *Id.* at 1041.

■ Despite its failure to register the copyrights, Criterion asserts that it should recover actual damages from Lockheed based on copyright infringement. (Pl.'s Amended Complaint, dkt. 17 at 5.) Lockheed's argument against Criterion's ability to recover actual damages is that the law does not support recovery of actual damages. (Def.'s Br., dkt. 81 at 44.) Much of the facts the court has already discussed suggest there are genuine disputed issues between the parties as to Brooks' creative process and alleged use of Criterion's proprietary information. Without direct evidence of copying, to establish a claim of infringement, the plaintiff must prove that: (1) defendants had access to the copyrighted material; and (2) that there is a substantial similarity between the works. *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir.1987). The parties dispute the number of projects Brooks made for the SSA, Brooks' basis of knowledge, and how similar the projects Brooks created for the SSA were to her work at Criterion. The court thus finds a genuine issue of material fact exists as to whether, and to what extent, Criterion has sustained

actual damages from Lockheed's alleged infringement of the Section 508 materials. Accordingly, the court denies Lockheed's motion for summary judgment on the Copyright Infringement (Count V) claim.

### 2. Intentional Interference with a Contract Claim Preempted by Copyright Statute

 Lockheed contends that Criterion's claims for Intentional Interference with Contract (Count I) and Unjust Enrichment (Count II) are preempted by the Copyright Act. Federal law preempts state law claims that fall within the subject matter of and are based upon rights protected under the Copyright Act. 17 U.S.C. § 301(a). Section 301(a) provides:

(a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any work under the common law or statutes of any State.

17 U.S.C. § 301(a) (2008). The Eighth Circuit's interpretation of copyright preemption is that "[a] state cause of action is preempted if: (1) the work at issue is within the subject matter of copyright as defined in §§ 102 and 103 of the Copyright Act, and (2) the state law created right is equivalent to any of the exclusive rights within the general scope of copyright as specified in § 106." *Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.,* 991 F.2d 426, 428 (8th Cir.1993), *cert. denied,* 510 U.S. 861, 114 S.Ct. 176, 126

L.Ed.2d 136 (1993) (internal citations omitted). Exclusive rights under Section 106 include the right to: (1) reproduce a copyrighted work; (2) prepare derivative works; and (3) distribute copies of the copyrighted work to the public. The Copyright Act only preempts state law rights that "may be abridged by [a state law] which, in and of itself, would infringe one of the exclusive rights provided by federal copyright law." *Nat'l Car Rental,* 991 F.2d at 431. *See Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 524 n. 22, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (Congress has the ability to preempt "particular common-law claims, while saving others."). For example, the Copyright Act has expressly preempted common law misappropriation. *Hallmark Cards, Inc.,* 833 F.2d at 121. Thus, the Copyright Act does not preempt state law claims if the state law protects rights that are "different in kind" from those protected under federal law. *BVS Performance Systems, Inc. v. Mercantile Bancorp., Inc.,* 2000 WL 34031502, at *1 (N.D.Iowa 2000).

To determine if the state law rights are "different in kind," the Eighth Circuit has developed the "extra element" test. According to the extra element test, "if an extra element is required, instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of copyright and there is no preemption." *Nat'l Car Rental,* 991 F.2d at 431 (internal quotations omitted). In *BVS Performance Systems,* the court held that a failure to pay for duplicated copyrighted material was sufficient as an "extra element" and "shelter[ed] the state law claim from preemption." 2000 WL 34031502, at *3. The court disagreed with the infringer that remuneration was a necessary element to copyright infringement; instead, the failure to pay under the con-

tract was "qualitatively different from [the] copyright infringement claim." *Id.* at *4. Furthermore, the *National Car Rental System* court held that an unjust enrichment claim can survive if it is an "allegation of damage as a further explanation of the damages [the plaintiff] intends to prove arising from the breach of contract." 991 F.2d at 434–35.

Because the court has already found Criterion has failed to establish a genuine issue of material fact for Count I, the court need not address Lockheed's argument that Count I is preempted by the Copyright Act.

 Applying the "extra element" test to the facts in the Unjust Enrichment (Count II) claim leads to a different result. Although Lockheed points to other jurisdictions and persuasive authority supporting the preemption of an unjust enrichment claim (Def.'s Br., dkt. 81 at 48–49), this jurisdiction has held otherwise. *National Car Rental System*, 991 F.2d at 434–35. Criterion attempts to meet the extra element test by asserting that the unjust enrichment claim falls outside the Section 106 preemptions of reproduction, distribution, or display. The extra element consists of Lockheed's hiring of Brooks, "as opposed to contracting with Criterion for its trade secret information." (Pl.'s Br. in Resistance, dkt. 95–2 at 56.) Criterion's posturing of the unjust enrichment claim mirrors *National Car Rental System*, at least in terms of explaining the damages; especially because the claim is not merely about improper Section 106 activities, but is based on unjust enrichment through Lockheed's contractual relationship with Brooks. The question as to whether and to how much Lockheed was unjustly enriched by Brooks' copyright infringement is a genuine issue of material fact. The court finds that Criterion's claim for Unjust Enrichment (Count II)

does satisfy the extra element test. Accordingly, the court denies Lockheed's motion for summary judgment on the Unjust Enrichment (Count II) claim.

Upon the foregoing,

**IT IS ORDERED**

Defendant Lockheed's Motion for Summary Judgment (Dkt. No. 78) on Counts One, Three, and Eight is GRANTED.

Defendant Lockheed's Motion for Summary Judgment (Dkt. No. 78) on Counts Two and Five is GRANTED IN PART and DENIED IN PART.